866 P.2d 1342

Genaro **PETOLICCHIO** and Nellie Petolicchio, husband and wife, and surviving parents of Gerald Petolicchio, Plaintiffs/Appellants,

v.

**SANTA CRUZ COUNTY FAIR AND RODEO ASSOCIATION, INC.**, an Arizona corporation; William Sinclair and Sharon Sinclair, husband and wife, individually and as employees and agents of liquor licensee Santa Cruz County Fair and Rodeo Association, Inc.; Mitchell T. Mattox, a single man, individually and as an employee of Santa Cruz County Fair and Rodeo Association, Inc., Defendants/Appellees.

No. CV–92–0198–PR.

Supreme Court of Arizona, En Banc.

Jan. 13, 1994.

---

258

Gonzales & Villarreal, P.C. by Richard J. Gonzales, Joan C. Calcagno, Tucson, for plaintiffs/appellants.

Bury, Moeller, Humphrey & O'Meara by David C. Bury, Tucson, for defendants/appellees.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Scott A. Salmon, Christopher Robbins, Troy B. Froderman, Phoenix, for amicus curiae.

## OPINION

FELDMAN, Chief Justice.

█ We granted review to determine whether the court of appeals correctly concluded that A.R.S. § 4–312(B) is unconstitutional insofar as it grants immunity to liquor licensees who furnish alcohol to minors.[1] *Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n*, 172 Ariz. 587, 838 P.2d 1348 (Ct. App.1992). We have jurisdiction under Ariz.

Const. art. 6, § 5(3) and A.R.S. § 12–120.24. Because the trial court granted a motion to dismiss the complaint for failure to state a claim, we must take the alleged facts as true. *Summerfield v. Superior Court*, 144 Ariz. 467, 470, 698 P.2d 712, 715 (1985).

## FACTS

On May 31, 1989, Gerald Petolicchio died after the car in which he was a passenger spun out of control at eighty miles per hour and crashed. Investigation revealed that the driver and four passengers, all minors, were under the influence of alcohol when the accident occurred.

Petolicchio's parents, Genaro and Nellie Petolicchio (Plaintiffs), brought a wrongful death action alleging that Mitchell T. Mattox, another passenger, furnished alcohol to the boys before the accident. At the time of the crash, Mattox and his mother, Sharon Sinclair, were employees of a liquor licensee, the Santa Cruz County Fair & Rodeo Association, Inc. (Association), where Sinclair managed liquor inventory and security. Mattox used his mother's keys to steal the Association's liquor. Prior to the fatal accident, the Santa Cruz County Sheriff's Office told Sinclair that her son was using her keys to steal liquor and distribute it to his high school classmates, but she did nothing to stop him. Plaintiffs also alleged that the Association knew, or should have known, about Mattox' thefts but negligently failed to supervise and control its liquor supply, allowing Mattox continuing access and opportunity to steal liquor. It is unclear whether the accident occurred after the first and only theft, or whether Mattox stole alcohol on a number of occasions, thus giving the Association and Sinclair notice. As noted above, on appeal from a grant of a motion to dismiss, we take the facts alleged as true.

## PROCEDURAL HISTORY

Plaintiffs joined Mattox, his parents, and the Association (collectively Defendants) in

1. We consolidated this case for oral argument with *Estate of Hernandez v. Arizona Board of Regents*, 177 Ariz. 244, 866 P.2d 1330, and *Simental v. Magma Copper Co.*, No. CV–92–0036–

PR, which present related issues. In *Estate of Hernandez*, decided today, we held that a "social host" may be liable for injuries caused by furnishing alcohol to minors.

the damages action. Defendants moved to dismiss for failure to state a claim. The trial court granted the motion, holding that A.R.S. § 4–312(B) gave the Association immunity because it provides that a licensee is not liable for any injury caused by "furnishing" alcohol. Implicitly, therefore, it also found that A.R.S. § 4–311, which would have subjected the Association to suit under a dram shop theory for selling alcohol to minors, did not apply because Defendants were not sellers and Mattox was not a purchaser of alcohol, as that statute requires. Finally, the trial court held that Mattox' conduct broke the chain of causation.

On appeal, Defendants noted that Arizona first recognized a cause of action against a seller of alcohol in this court's 1983 decisions in *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200, and *Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213. Therefore, they argued that the immunity granted under § 4–312(B) is not subject to constitutional scrutiny because art. 18, § 6 only prevents the legislature from abrogating causes of action recognized at the time of statehood. *See Bryant v. Continental Conveyor & Equip. Co., Inc.*, 156 Ariz. 193, 751 P.2d 509 (1988).

Plaintiffs claimed that the immunity statute, § 4–312(B), is subject to constitutional scrutiny and does not survive. Citing *Boswell v. Phoenix Newspapers, Inc.*, Plaintiffs asserted that the anti-abrogation clause of Ariz. Const. art. 18, § 6 protects this cause of action, regardless of whether it had been recognized before statehood. 152 Ariz. 9, 730 P.2d 186 (1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987).

The court of appeals vacated the order granting the motion to dismiss and held § 4–312(B) unconstitutional as applied to liquor licensees. It reasoned that in *Ontiveros*, Arizona common law recognized this type of claim and, under *Boswell*, art. 18, § 6 prohibits its abrogation. We note that after the court of appeals filed its opinion, this court overruled *Bryant* and approved *Boswell*, holding that actions for damages are protected by our constitution, even if first recognized or asserted after statehood. *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 861 P.2d 625 (1993).

## DISCUSSION

■ Although we granted review on the statute's constitutionality, after analyzing the facts and relevant statutes, we find the constitutional issue secondary. Arizona's courts do not reach constitutional issues if proper construction of a statute makes it unnecessary in determining the merits of the action. *State v. Yslas*, 139 Ariz. 60, 63, 676 P.2d 1118, 1121 (1984); *School Dist. No. 26 v. Strohm*, 106 Ariz. 7, 9, 469 P.2d 826, 828 (1970). Having today construed the relevant statutes in *Estate of Hernandez v. Arizona Board of Regents*, 177 Ariz. at 248–252, 866 P.2d at 1334–1338 (1993), we believe they are inapplicable to the cause of action asserted in this case and conclude that common-law principles govern this action. This, of course, avoids the necessity for a constitutional analysis.

### A. Do the statutes apply?

Arizona's statutes regulate tort liability arising out of certain alcohol-related transactions. It is necessary first to determine if any statute governs this cause. The history and general outline of these statutes are described in *Estate of Hernandez* and need not be repeated. Suffice it to say that the three statutes passed in 1985 and 1986 outline certain immunities to licensees and non-licensees. In part, they also codify *Ontiveros* and *Brannigan* by imposing statutory liability on licensees in certain situations. We turn now to those statutes and consider their application, if any, to this case.

#### 1. *The social host statute*

■ Non-licensee liability is encompassed in Article 1 of Chapter 3, entitled **Liability Limitation**. A.R.S. § 4–301 reads:

**Liability limitations; social hosts**

A person other than a licensee ... is not liable in damages to any person who is injured, or to the survivors of any person killed, or for damage to property, which is alleged to have been caused in whole or in part *by reason of the furnishing or serving* of spirituous liquor to a person of the legal drinking age.

(Emphasis added.) This section protects from liability non-licensees who furnish alcohol to *adults*. As we held in *Estate of Hernandez*, however, the statute does not protect non-licensees who furnish alcohol to *minors*. 177 Ariz. at 249, 866 P.2d at 1335. Further, as far as the Association and Sinclair are concerned, the statute obviously does not apply to the transaction described in this case. Mattox was not a guest, and the liquor was stolen, not "furnished" or "served" under any rational definition of those terms. Therefore, we conclude that § 4–301 does not protect Defendants.

## 2. *The licensee statutes*

Two statutes regulate alcohol transactions under a liquor license. They are in Article 2 of Chapter 3, and are entitled **Illegal Sale of Spirituous Liquor.**

### a. *The dram shop liability statute*

■ Section 4–311, which imposes liability on licensees under certain circumstances, states in pertinent part:

A. *A licensee is liable* for property damage and personal injuries or is liable to a person who may bring an action for wrongful death pursuant to § 12–612 *if* a court or jury finds the following:

1. *The licensee sold* spirituous *liquor* either *to a purchaser* who was obviously intoxicated, or to a purchaser under the legal drinking age without requesting identification containing proof of age or with knowledge that the person was under the legal drinking age, . . . .

(Emphasis added.)

Defendants argue that the wording of § 4–311 is sufficiently narrow to exclude the present facts. We agree. For dram shop liability to exist under § 4–311, the licensee must *sell* alcohol to a *purchaser* who is either intoxicated *or* under the legal drinking age. Obviously, no such commercial sale occurred here. We do not now address how narrowly

or broadly the term "sold" should be interpreted. Suffice it to say again that under any rational meaning of the term, the liquor here was not sold. Defendants were not acting as licensees in this transaction—even unlicensed persons may store alcohol. Moreover, Mattox certainly was no purchaser—he was alleged to be a thief. Thus, we conclude that A.R.S. § 4–311 does not apply.

### b. *The dram shop immunity statute*

■ The next arguably relevant statute, A.R.S. § 4–312(B),[2] provides, in relevant part:

*[E]xcept as provided in § 4–311*, a person, firm, corporation or *licensee is not liable* in damages to any person who is injured, or to the survivors of any person killed, or for damage to property which is alleged to have been caused in whole or in part *by reason of the sale, furnishing or serving* of spirituous liquor.

(Emphasis added.) Defendants contend that because they are not liable "as provided in § 4–311," the terms of § 4–312(B) apply to grant licensees immunity from suit under any other set of circumstances. This, indeed, was the trial court's result. We disagree.

Under § 4–312(B), there is no liability "by reason of the sale, furnishing or serving of spirituous liquor." Although this language is admittedly broader than the "sold" to a "purchaser" language used in § 4–311,[3] it still does not contemplate the *taking* of alcohol. Although we do not attempt to determine the statute's ultimate reach by parsing the operative phrases, it is clear that whatever their semantic significance, Plaintiffs do not charge Defendants with selling, furnishing, or serving liquor to Mattox. In essence, they claim that, with notice of the danger, Defendants negligently gave Mattox the opportunity to steal the liquor or failed to prevent him from doing so. As we said in *Estate of Hernandez*, § 4–312(B) protects from liability only licensees and their associates while conducting a transaction permitted under a

---

2. *Schwab v. Matley,* 164 Ariz. 421, 793 P.2d 1088 (1990), held that § 4–312(A), which immunizes licensees from actions brought by adult consumers or their families, was unconstitutional as a violation of Ariz. Const. art. 18, § 5.

3. Although we note the seemingly narrower wording of § 4–311 when compared with § 4–312, we do not now decide whether it is possible to make a distinction between the applicability of these two statutes.

license for the "sale, furnishing, or serving" of alcohol. 177 Ariz. at 252, 866 P.2d at 1338.

Thus, we conclude that Arizona's social host and dram shop legislation does not apply to the present facts. Rather, this cause of action must stand or fall on basic common-law negligence principles. Having concluded that the statutes neither impose liability nor grant immunity in this case, we now turn to the common-law issues briefed and decided in the court of appeals. *Petolicchio*, 172 Ariz. at 590, 838 P.2d at 1351.

### B. Is there a common-law negligence action?

Plaintiffs allege various negligence theories for each defendant.[4] We do not, at this juncture, determine the merits of Plaintiffs' claims but limit our examination to the question of whether there is a common-law cause of action covering those claims. Thus, we go no further than deciding whether, as a matter of law, Defendants owed Plaintiffs a duty of reasonable care, a breach of which could give rise to legal liability, and whether a reasonable person could find that a breach of that duty was a proximate cause of the accident.

We preface this analysis with a caveat. The concepts of duty and proximate cause in dram shop and related situations overlap and are sometimes difficult for courts to distinguish. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 42, at 273–74 (5th ed. 1984). We attempt to separate them here for the sake of rational discourse but do not attempt completely to distinguish the two.

### 1. *Duty*

The court decides whether a duty exists. *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). "The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Id.* This court has held that a licensee who furnishes alcohol to one incompetent to use it owes to the public a duty of care created by the foreseeable risk of harm to third parties. *Brannigan*, 136 Ariz. at 517, 667 P.2d at 217. Today, in *Estate of Hernandez*, we found this to be true, even when the one furnishing alcohol is not a licensee but is serving an underaged person. Therefore, the only issue is whether the concept of duty is broad enough to encompass situations in which alcohol is not affirmatively furnished but reaches the minor in some indirect way. The question, in this case, is whether the Association, alleged to have notice of the fact that minors had access to and were stealing and personally using alcohol, was under a duty to take reasonable precautions for the safety of the general public.

In *Carrillo v. El Mirage Roadhouse, Inc.*, 164 Ariz. 364, 793 P.2d 121 (Ct.App.1990), a licensee refused to serve an intoxicated patron but sold alcohol to the patron's friends, who then gave it to the patron. While driving home from the bar, the patron was fatally injured in a one-car accident, and his widow brought an action against the licensee. Sections 4–311 and 4–312 had not yet been enacted. However, the licensee claimed it had satisfied § 4–244(14)[5] because it had not directly served alcohol to the intoxicated patron.

The court of appeals construed § 4–244(14) broadly enough to impose a legal obligation

---

4. Plaintiffs charge the Association with negligently entrusting keys to the liquor supply to Sharon Sinclair and negligently supervising and retaining Sinclair and Mattox. They further allege that the Association failed to control its employee (Mattox), even after learning of his thefts. Plaintiffs charge Sharon Sinclair with negligent conduct and the Association with vicarious liability.

5. In pertinent part, § 4–244 states:

It is unlawful:

9. [F]or a licensee or other person to sell, furnish, dispose of or give, or cause to be sold, furnished, disposed of or given, to a person under the legal drinking age.

\* \* \* \* \* \*

14. For a licensee or other person to serve, sell or furnish spirituous liquor to an intoxicated or disorderly person.

The relevance of this statute to the question of duty is discussed at length in *Estate of Hernandez*, 177 Ariz. at 251, 252–253, 866 P.2d at 1337–1338, 1339.

on the licensee to avoid indirectly serving alcohol. The court held that the continuing devastation from drunk driving compelled examination of the changing attitudes and needs of society. "The frequency of accidents involving drunk drivers and the attendant carnage to an unsuspecting public compel us to continually scrutinize the scope of the [evolving] common law in this area." *Carrillo*, 164 Ariz. at 367, 793 P.2d at 124 (citing *Ontiveros*, 136 Ariz. at 504, 667 P.2d at 204; *Reben v. Ely*, 146 Ariz. 309, 705 P.2d 1360 (Ct.App.1985)). We believe the present case merits a similar analysis. The combination of alcohol, gasoline, and immature judgment is as deadly as statistics suggest. *See Estate of Hernandez*, 177 Ariz. at 252, 866 P.2d at 1337 n. 8 (citing statistics on teenage deaths attributable to alcohol-related automobile accidents).

There are similar situations in which courts impose a duty of reasonable care to protect the public against another's foreseeable criminal acts. The imposition of duty generally responds to changed social conditions. For instance, courts now routinely hold a landlord liable for damages arising from the property's inadequate security or lighting, which contributes to harming a tenant or third person due to an intervening criminal act. *See, e.g., Frances T. v. Village Green Owners Ass'n*, 42 Cal.3d 490, 229 Cal. Rptr. 456, 723 P.2d 573 (1986) (condominium operators may be liable for plaintiff's injuries where they had actual knowledge of inadequate lighting, and the hazardous condition it created, yet failed to remedy the condition, leading to plaintiff's rape and robbery); *see also Sherman v. Concourse Realty Corp.*, 47 A.D.2d 134, 365 N.Y.S.2d 239 (1975) (same, broken lock); *Lay v. Dworman*, 732 P.2d 455 (Okla.1986) (same); *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985) (owner of unlocked, vacant apartment building may be liable for rape that occurs there).

■ Furnishing firearms is another area in which courts frequently impose a duty of care. Even though a third person's criminal act directly caused the injury, if a person or business negligently provided or allowed access to a gun, there could still be liability to the injured party. *See Crown v. Raymond*, 159 Ariz. 87, 91, 764 P.2d 1146, 1150 (Ct.App. 1988) (minor's use of gun furnished by defendant to commit suicide was not unforeseeable as a matter of law); *Bernethy v. Walt Failor's, Inc.*, 97 Wash.2d 929, 653 P.2d 280 (1982) (merchant who negligently furnished gun to intoxicated patron should have foreseen that the patron might shoot his spouse).

There are other cases in which a third party's intervening criminal acts do not relieve a negligent actor of liability. *See, e.g., Hamman v. County of Maricopa*, 161 Ariz. 58, 775 P.2d 1122 (1989) (therapist who determined that patient posed serious threat to others had a duty to exercise reasonable care to protect foreseeable victim); *Hodge v. Nor–Cen Inc.*, 527 N.E.2d 1157 (Ind.Ct.App. 1988) (arsonist's setting of fire was not an intervening event that broke the causal connection between landlord's negligence in failing to provide adequate escape routes).

■ The present cause of action is similar to these cases and leads to a similar conclusion. We conclude, under these facts, that a licensee storing alcohol has a duty to exercise reasonable care to guard that substance from those who will foreseeably endanger the public by its use. This does not mean, of course, that we find negligence. Duty is a question for the court, and we limit our holding to that issue. *See Markowitz*, 146 Ariz. at 356, 706 P.2d at 368.

### 2. *Proximate cause*

■ Generally, proximate cause is a question of fact for the jury. *Gosewisch v. American Honda Motor Co.*, 153 Ariz. 400, 404, 737 P.2d 376, 380 (1987). However, the court may properly decide proximate cause if, after reviewing the facts, there is "no reasonable chance or likelihood that the conclusions of reasonable persons would differ." *Flowers v. K–Mart Corp.*, 126 Ariz. 495, 497, 616 P.2d 955, 957 (Ct.App.1980). Defendants argued, and the trial court agreed, that as a matter of law Defendants' conduct was too remote from the injury to be a legal cause. We disagree.

Defendants asserted in the trial court that whatever their duty to Gerald Petolicchio, the chain of causation broke at the point

Mattox stole the liquor. It would be unjust, they said, to find them liable for a harm that occurred because of a third party's illegal act. The RESTATEMENT (SECOND) OF TORTS (hereinafter RESTATEMENT) states the rule regarding superseding cause in such cases:

Where the negligent conduct of the actor creates or increases the risk of a particular harm ... the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person *and* is not within the scope of the risk created by the actor's conduct.

RESTATEMENT § 442B (1965) (emphasis added).

[An] intentional tort or crime is a superseding cause of harm, ... unless the actor at the time of [the] negligent conduct realized or should have realized the likelihood that such a situation [the opportunity to commit a tort or crime] might be created, and that a third person might [use] the opportunity to commit such a tort or crime.

RESTATEMENT § 448.

If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

RESTATEMENT § 449.

These sections, taken together, clearly establish that an intervening criminal act is not necessarily a superseding cause that relieves a negligent party of liability. Arizona courts have consistently adopted this position. *See Delozier v. Evans,* 158 Ariz. 490, 763 P.2d 986 (Ct.App.1988) (bar could be liable for failing to protect patrons from foreseeable harm where bar patron was struck on the head with a baseball bat by another patron); *Parness v. City of Tempe,* 123 Ariz. 460, 600 P.2d 764 (Ct.App.1979) (recreation center could be liable for plaintiff's injuries resulting from broken glass, even though other children pushed plaintiff down onto the glass).

Of course, Mattox' theft was an intervening cause, but it would only break the proximate causation chain if it was a "superseding" cause. *Rossell v. Volkswagen of America,* 147 Ariz. 160, 168, 709 P.2d 517, 525 (1985), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986). An event is superseding only if it "was both unforeseeable and when with the benefit of 'hindsight' it may be described as abnormal or extraordinary." *Id.* 147 Ariz. at 169, 709 P.2d at 526; *see also Serrano v. Kenneth A. Ethridge Contracting Co.,* 2 Ariz.App. 473, 409 P.2d 757 (1966). When a defendant's actions increase the foreseeable risk of a particular harm occurring through the conduct of a third party, that defendant is not relieved of liability. *Ontiveros,* 136 Ariz. at 506, 667 P.2d at 206.

Defendants claim they cannot be responsible for this series of events beyond their control. Not only did Mattox steal the alcohol, he gave it to the driver, who then caused the accident. But Defendants do not claim, and we cannot say as a matter of law, that these acts were unforeseeable. Indeed, if Defendants knew that Mattox was pilfering liquor, a jury might well conclude it was foreseeable that he would distribute it to his high school classmates, creating an appreciable danger of a vehicular accident. It is not necessary that Defendants foresaw the actual harm that occurred, only that harm could occur. RESTATEMENT § 435 cmt. a.

Nor, with or without the benefit of hindsight, can we say that an alcohol-related accident would be so extraordinary that a reasonable person would not anticipate this danger. *See* RESTATEMENT § 435 cmt. d. Our daily newspapers routinely chronicle such tragedies. As noted in *Ontiveros,* it is almost always foreseeable that drinking and driving may lead to automobile accidents. *Ontiveros,* 136 Ariz. at 507, 667 P.2d at 207 (citing *Vesely v. Sager,* 5 Cal.3d 153, 95 Cal. Rptr. 623, 486 P.2d 151 (1971); *Ono v. Applegate,* 62 Haw. 131, 612 P.2d 533 (1980); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959)). Therefore, if Defendants had reason to know that minors might pilfer their alcohol, we cannot say, as a matter of law, that the subsequent chain of events was so un-

**264**

foreseeable, abnormal, and extraordinary that it constitutes a superseding cause, breaking the chain of causation.

## CONCLUSION

We conclude that none of the relevant licensee or non-licensee statutes either impose liability on Defendants or grant immunity to them. The social host statute, A.R.S. § 4–301, is inapplicable, both because the recipients of the liquor were minors and because the transaction by which Mattox obtained the alcohol was not within the scope of a statute purporting to regulate non-licensee liability.

No liability was imposed by A.R.S. § 4–311, the statute codifying dram shop liability, because the alcohol was not sold to Mattox but, rather, was taken by him without the owner's consent. No immunity is granted under A.R.S. § 4–312(B) because the transaction in question did not involve the "sale, furnishing or serving" of alcohol under a license but, instead, involved the theft of alcohol allegedly resulting from the failure of the owner and its employees to use reasonable care to protect the inventory from a known danger of pilferage.

Thus, the propriety of the order dismissing the complaint must turn on the existence of a common-law cause of action under the facts set forth in the complaint. We conclude that *if* evidence of those facts is adduced at trial, Plaintiffs would make a prima facie case for the jury. Thus, the trial court erred in granting the motion to dismiss.

We therefore vacate the trial court's order dismissing the complaint, vacate the court of appeals' opinion, and remand to the trial court for further proceedings consistent with this opinion.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.