*Kim H. JENSEN*
Plaintiff-Appellant
*vs.*
*GIANT INDUSTRIES, Arizona, Inc. and Giant Four Corners, Inc.*
Defendants-Appellees

In the Supreme Court of the Navajo Nation

No. SC-CV-51-99

January 22, 2002

Daniel M. Rosenfelt, Esq., Rosenfelt, Barlow & Borg, Albuquerque, New Mexico, for Appellant.

Lawrence A. Ruzow, Window Rock, Navajo Nation (Arizona), for Appellees.

Before YAZZIE, Chief Justice, KING-BEN, and MORRIS (by designation), Associate Justices.

Opinion by KING-BEN, Associate Justice.

This is an appeal from a September 15, 1999 order of the Chinle District Court which granted the defendants summary judgment in a premises liability case. It involved a stabbing of an individual while using a public telephone at Rock Point Trading Post in the Arizona portion of the Navajo Nation on June 21,1996.

## I

Kim H. Jensen (Jensen) was an employee of U.S. Communications who installed fiber optic cables in the Farmington, New Mexico area. On June 21, 1996, Jensen, while passing through Rock Point, stopped at the Rock Point Trading Post to use the public telephone. As he was at the telephone, Bernard Benally (Benally) stabbed him in the stomach with a knife. As a result, Jensen sued the manager and assistant manager of the trading post and its owners, Giant Four Corners, Inc., which is qualified to do business in the Navajo Nation as the trading post lessee, and is a wholly-owned subsidiary of Giant Industries, Arizona, Inc. Following discovery, the defendants moved for summary judgment on the ground that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. The District Court granted summary judgment, finding that the claim was barred by our statute of limitations, there was no claim under both Navajo common law and general (American) common law principles.

This appeal requires us to address (1) the application of the pertinent Navajo Nation statute of limitations in light of the computation of time provisions of Rule 6(a) of the Navajo Rules of Civil Procedure (Nav.R.Civ.P.), (2) burdens and allocations of proof for motions for summary judgment under Rule 56 of the Nav.R.Civ.P., (3) applicable Navajo common law principles, and (4) the law of premises liability arising from assaults upon business guests by third persons. Our review of the judgment on a motion for summary judgment is *de novo*.

## II

The first issue is the correct application of the statute of limitations. The cause of action arose on Friday, June 21, 1996, when Benally stabbed Jensen at the Rock Point Trading Post. The complaint was filed on Monday, June 22, 1998, two years and one day later. Pursuant to 7 NNC §602(A) (1995), an action for personal injury must be filed within two years after the cause of action accrues. The District Court recognized the computation of time provision in Rule 6(a) of the Nav.R.Civ.P., which indicates that the date of the act or event is excluded from a time computation, but the last day of the period is included, unless it falls on a Saturday, Sunday, or a court holiday. In that event, the last day is the end of the next business day which is not a Saturday, Sunday, or a court holiday. The District Court applied the statute literally and held that Rule 6(a) cannot extend the time established by the statute.

The issue is resolved by applying principles of statutory construction. Both the statute of limitations at 7 NNC §602(A) (1995) and Rule 6(a) of the Nav.R.Civ.P. on the computation of time are derived from general American civil procedure. Therefore, we will look to general interpretations of the applicable law and apply them, if they are in accord with Navajo Nation statutory intent and Navajo common law. *Navajo Nation v. Platero*, 6 Nav. R. 422, 427-428 (Nav. Sup. Ct. 1991)

(concurring opinion of Chief Justice Tom Tso). There are two approaches to this problem, with some courts applying the strict rule, as the District Court did here, *e.g., Jt. Council Dining Car Employees Loc. 370 v. Delaware. L. & W.R. Co.*, 157 F.2d 417 (2nd Cir. 1946), and others applying Rule 6(a) principles to statutes of limitation. *See, Lawson v. Conyers Chrysler. Plymouth, and Dodge Trucks. Inc.*, 600 F.2d 465 (5th Cir. 1979) (citing C. Wright & A. Miller, Fed. Practice & Procedure 1163 and other cases). We choose the latter principle, which is the majority rule, and we will read the statute of limitations in conjunction with the computation of time rule. That makes greater sense, because it is physically impossible for a litigant to file a complaint on a Saturday, Sunday, or legal holiday. While statutes of limitation are designed to put disputes to rest after a fixed period of time, there are exceptions to such limitations, and it is reasonable to conclude that a complaint filed on the first day the court is open following a weekend or holiday fits the intent of the statute of limitations.

### III

The threshold question in this appeal is whether the trial court correctly determined that there was "no genuine issue of material fact and that the moving party [was] entitled to judgment as a matter of law." Rule 56(c), Nav. R. Civ. P. The purpose of summary judgment is to determine if there is a sufficient dispute as to the facts for a case to go to trial. *Thomas v. Succo*, 7 Nav. R. 63-75 (Nav. Sup. Ct. 1993); *Begay v. Dennison*, 4 Nav. R. 115, 116 (Nav. Ct. App. 1983). What is a material fact? It is one which is required by the substantive law which defines the claim or defense, and it is facts which may affect the outcome of the suit, based on the substantive law definition. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" under our rule if a "reasonable jury could return a verdict for the nonmoving party" based upon a disputed fact. *Id.* It is not the trial judge's function to weigh the evidence and to determine the truth of the material facts before the court, but to decide whether there is a genuine issue for trial. *Id.* at 249.

One of the issues in this case is whether the District Court was correct in granting the motion for summary judgment based upon Navajo common law when the appellant failed to rebut the affidavit of Bennie Silversmith. Appellee's Brief, Appendix A. There was also an affidavit by E. Dwayne Tatalovich, a security, investigations and consulting expert, which offered his opinion that the defendants were not liable under principles of American premises liability law. *Id.*, Appendix B. The normal rule is that summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and which that party will bear the burden of proof for trial." *Celotex Corn. v. Catrett*, 477 U.S. 317,322 (1986).

Going first to Mr. Silversmith's affidavit, a traditional Navajo medicine practitioner, therapist, and a medicine man, his affidavit did not meet our requirements to prove Navajo common law under 7 NNC § 204(B) (1995), where the court may request the "advice of counselors familiar with ... customs and

usages" when there is "any doubt" about them. Court established the test for such testimony in the case of *In re Estate of Belone v. Yazzie*, 5 Nav. R. 161 (Nav. Sup. Ct. 1987). The court must first determine the witness's status as an "expert," assess the relevance of his testimony, and find it will aid the court's or the jury's understanding of a given custom before relying upon the testimony. *Id.* at 166-167. The preferred procedure is to conduct an informal conference with two or three experts when there is a doubt about the existence or nature of a custom that could determine a dispute's outcome and expert testimony is used to determine the law. *Id.* at 166. The goal is to arrive at a consensus about a given custom using the traditional Navajo procedure of discussion in a nonadversarial setting. *Id.* That avoids the situation where a party tries to interpret custom to benefit his or her own interests. *Id.* Silversmith's opinion was not binding upon the trial court. The same holds true of Mr. Tatalovich's affidavit. They were offered to provide expert opinions on liability, but an opinion offered to the court is an opinion only. They should not be used to usurp or unduly influence the decision of the trier of fact. If there is a genuine issue of material fact which should go to a jury, or to the court sitting without a jury, then such opinions should be used at that time. The plaintiff was not required to rebut opinions, because they are not "material facts" addressed by the rule.

### IV

Did Mr. Silversmith's single affidavit sufficiently establish the Navajo common law applicable to this case to support a summary judgment? If someone is injured by the act of another, then the victim has the right to demand *nályééh* or compensation for the injury. *Claim of Joe*, 7 Nav. R. 66, 69 (Nav. Sup. Ct. 1993). We are not convinced by the analogy that although there may be bootleggers and drunks at Navajo ceremonies, there is no liability by the family that puts up the ceremony or the medicine person who conducts it if someone is injured by a drunk who buys alcohol from a bootlegger. When we said that if someone is injured "by the act of another," we meant a highly-factual analysis of relationships, actions, and their effects. It is not sufficient to make a broad analogy, and a Navajo common law analysis must be grounded in fact. *Belone*, supra, at 166. Navajo common law liability has its own special rules, and we will not venture an extensive examination of that liability at this stage of the case, but our judgment statute, 7 NNC § 701 (1995), requires the court to determine whether an injury was the result of carelessness, deliberate infliction, or accident, with varying degrees of damages, depending upon the nature of the injury.

### V

Did the plaintiff have a cause of action under general American principles of premises liability law? Before addressing that, we first observe (as have other appellate courts) that liability for the lack of reasonable care to protect the

public against another's foreseeable acts depends on changed social conditions. *Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n., Inc.*, 177 Ariz. 256, 261, 866 P.2d 1342, 1347 (1994). Modern courts have discarded an "absolute" prior rule that there is no liability in such situations in favor of an approach which incorporates a "current legal understanding" which is "dictated by conditions and circumstances of modern society." *El Chico Corn. v. Poole*, 732 S.W.2d 306, 310-11 (Tex. 1987). Given contemporary concerns over crime and injuries to victims of crime, there is a heightened awareness of potential premises liability for crimes committed by persons in "special relationships" with premises owners and operators, and such claims are on the rise. *See*, Corey L. Gordon & William Brill, *The Expanding Role of Crime Prevention Through Environmental Design in Premises Liability*, National Institute of Justice, Research in Brief (April 1996). We cannot disregard Navajo Nation crime patterns and the incidence of crime in public places as part of our current legal understanding, based on changed social conditions and the circumstances of modern Navajo Nation society.

We have generally grounded negligence in the ability to foresee an injury, *Mann v. Navajo Tribe*, 4 Nav. R. 83 (Nav. Ct. App. 1983); *Thomas v. Succo*, 7 Nav. R. 63 (1993). As a general rule, the tort of negligence has four components-a duty to the person injured, a breach of that duty, causation, and resulting damages. *See Castillo v. Charlie*, 7 Nav. R. 181–182 (Nav. Sup. Ct. 1995). The most controversial and contested element is usually duty. Did the Rock Point Trading Post have any duties toward Jensen, and if so, what was the source of those duties?

We look to the Restatement (Second) of Torts on premises liability to see the legal effect of the acts of third persons against members of the public visiting businesses:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts, § 344 (1965). Comment "f" of that section elaborates on the principle:

> Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on

> the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

*See also, Borden v. Worthen Nat'l Bank*, 921 S.W.2d 934 (Ark. 1996) (decision reviewing premises liability principles in the context of an individual who was attacked at an automated teller machine, a situation factually related to the situation here, where the plaintiff was attacked at a telephone outside the trading post). *See also, Hardy v. Pier 99 Motor Inn*, 664 So.2d 1095 (Fla. App. 1995) (stabbing of motel guest in the parking lot); *Abernethy v. Spartan Food Systems. Inc.*, 103 N.C. App. 154,404 S.E.2d 710 (N.C. App. 1991) (stabbing of a customer in a restaurant); and *Easter v. Jack-in-the-Box*, 546 S.W.2d 16 (Tex. App. 1977) (stabbing of customer in a restaurant; reviewing annotations and the Restatement (Second) of Torts).

The duties of providers of public services to members of the public have ancient origins. *See e.g.*, Charles M. Haar & Daniel Wm. Fessler, *Fairness and Justice* (1986) (history of the duty of purveyors of goods and services to serve the public). There may be an evolving "duty to act" to prevent harm or injury. *See,* Marshall S. Shapo, *The Duty to Act: Tort Law, Power, & Public Policy* 54–57 (1977). Longstanding principles of English-American common law evolve and adjust to adapt to changed circumstances of the times and modern relationships, and our law must do so as well.

The appellee-owners qualify as a "possessor of land," because they "hold" the trading post under a lease, and it is open to the public to enter for business purposes. The particular injury was the intentional act of a third person. The remaining issues, which have not been resolved, are whether the trading post's managers and employees discovered that the kinds of acts in question (harassment of members of the public) were being done or were likely to be done, or that the defendants failed to give an adequate warning to enable the appellant to avoid the harm or to protect himself against it. Those are "material facts" for purposes of summary judgment, because they are elements of the plaintiff's cause of action. There was a sufficient genuine dispute as to proof of those elements to remove the case from consideration for disposition by summary judgment. We decline the appellant's invitation to elaborate on comparative duty or causation, because those issues are not before us, and we will not give an advisory opinion on the standards to be used at trial.

## VI

We find that there were genuine issues of material fact in the record before the District Court. For example, there was sufficient concern about disorder in the Rock Point community that the trading post was asked to contribute

to a common fund to hire a community security guard before the attack, as recognized in the District Court's decision. The court also acknowledged that there was a problem with the presence of intoxicated people at the trading post, and that from time to time, intoxicated people would approach customers to annoy them. While the deposition of Susie Begay, the trading post manager, asserted that Benally had not previously caused problems for the trading post or its customers, the affidavit of Martin E. Maier suggested that Benally had a reputation for intimidating innocent people and destroying property. While Ms. Begay said that there had been no previous incident involving a weapon or a threat to a customer, the affidavit of Danny Yazzie suggested that lawless conduct at the trading post was not unusual. Kee Yazzie gave an affidavit to the effect that prior to the stabbing, there had been several fights, violent acts and criminal conduct on the trading post property, and that its operators did nothing to prevent such conduct or the sale and consumption of alcohol.

We find, upon a review of the applicable rules of premises tort liability, that there were genuine issues of material fact, as framed by the principles above, for the District Court to have determined that this case should go to trial. Accordingly, we REVERSE the September 15, 1999 summary judgment of the Chinle District Court and REMAND this case for trial.