NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JEFFREY M. DOMINGUEZ, *Appellant.*

No. 1 CA-CR 16-0845
FILED 12-28-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-142227-001
The Honorable Rosa Mroz, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jason Lewis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**W I N T H R O P**, Presiding Judge:

¶1        Jeffrey Michael Dominguez ("Dominguez") appeals his conviction and sentence for aggravated assault of a peace officer.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On September 8, 2015, a dental office employee saw Dominguez urinating on a tree outside the office.  Minutes later, the employee left the office to get the mail and was approached by Dominguez, who laughed as he showed her his penis.  The employee returned to the office and called the police.

¶3        Three Tempe Police officers responded to the call.  One officer went to the dental office to speak with the employee and the other two officers went to speak with Dominguez.  After speaking with the employee, the officer drove her near where Dominguez was seated with the other officers, and the employee identified Dominguez as the man who exposed himself to her earlier that afternoon.  The officer then drove the employee back to the office, and joined the other officers in order to arrest Dominguez. Dominguez jumped up once he realized the officers were attempting to arrest him; the officers tried to grab Dominguez' arms, but, in doing so, they all fell to the ground.  Dominguez then began to kick and put his arms underneath his chest to avoid being handcuffed.  One officer deployed her Taser, but Dominguez removed the wires, regained his footing, and stood up.

¶4        The officers commanded Dominguez to stop resisting, but he did not comply.[1]  The officers then grabbed Dominguez around the waist and they all fell to the ground again, at which point one officer struck

---

[1]        The officers testified that Dominguez did not intentionally attempt to punch or kick them.

Dominguez five times on his head in an attempt to subdue him,[2] before a second officer deployed her Taser for a second time. Dominguez again disconnected the Taser wires, and continued to roll on the ground. Another officer deployed his Taser for the third time, at which point the officers were able to gain control over Dominguez and handcuff him.

¶5        Once Dominguez was arrested, the officer who had struck Dominguez went to the hospital, where he was diagnosed with a sprained wrist. The officer missed two days of work and wore an arm brace for one week because of his injury.

¶6        On October 27, 2015, Dominguez was indicted on three counts: aggravated assault, a class 4 felony; resisting arrest, a class 6 felony; and indecent exposure, a class 1 misdemeanor. Following the indictment, Dominguez proceeded to trial. At the close of trial, the court instructed the jury on the elements of resisting arrest and aggravated assault, but did not provide a causation instruction. Neither party objected to the jury instructions.[3] During deliberation the jury asked whether "it matter[ed] how the officer was injured during the struggle? Whether the injury occurred during strikes being delivered (the direct behavior of the officer) versus injury during a fall to the ground, et cetera." The court informed the jury that it had "to decide how the officer was injured and whether the defendant intentionally, knowingly, or recklessly caused that injury." After deliberation, the jury found Dominguez guilty on all counts.

¶7        Dominguez filed a timely notice of appeal. We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2010), and 13-4033(A) (2010).

---

[2]        Although the officers' conduct was not at issue, one officer testified that their use of force during the arrest was within police policy, and that officers were permitted to use closed fist strikes as a technique to gain an arrestee's compliance.

[3]        Generally, courts have held that if a jury is properly instructed as to all elements of an offense, the court need not give specific causation instructions. *State v. Mott*, 187 Ariz. 536 (1997).

**ANALYSIS**

¶8        On appeal, Dominguez' only argument is there was insufficient evidence to convict him of aggravated assault because the evidence the State submitted does not show he caused the officer's injury.

¶9        We review questions of sufficiency of the evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).  We will affirm a jury's conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at ¶ 16 (quoting *State v. Mathers*, 165 Ariz. 64, 66 (1990)).  We will reverse for insufficient evidence only if there is a complete absence of probative facts to support a jury's conclusion.  *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (citation omitted).  *See also State v. Arredondo*, 155 Ariz. 314, 316 (1987) (finding a jury verdict will be set aside if under "no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury" (citation omitted)).  It is the jury's responsibility to determine the credibility and weight to give conflicting evidence.  *See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004).

¶10        Here, the State was required to present sufficient evidence that Dominguez committed aggravated assault by intentionally, knowingly, or recklessly causing physical injury to a peace officer engaged in his official duties.  *See* A.R.S. §§ 13-1203(A)(1) (2010), -1204(A)(8)(a) (Supp. 2016).

¶11        Dominguez argues the State failed to prove he intentionally, knowingly, or recklessly caused the officer's injury.[4]  Instead, Dominguez argues the officer's deliberate decision to hit him caused the sprained wrist.

¶12        Dominguez essentially argues the State failed to prove causation.  To establish causation the State must prove that "[b]ut for the conduct the result in question would not have occurred[,]" and "[t]he relationship between the conduct and result satisfies any additional causal

---

[4]        The officers testified that Dominguez did not intentionally kick or hit them.  Thus, the jury's basis for convicting Dominguez of aggravated assault was likely that he caused physical injury either knowingly (the awareness or belief that his actions would cause an injury) or recklessly (the "gross deviation from the standard of conduct that a reasonable person would observe in the situation").  A.R.S. § 13-105(10)(b)-(c) (Supp. 2016).

requirements imposed by the statute defining the offense." A.R.S. § 13-203(A)(1)-(2) (2010). In criminal cases, "both 'but for' causation and proximate cause must be established." *State v. Marty*, 166 Ariz. 233, 236 (App. 1990) (citing *State v. Lawson*, 144 Ariz. 547, 559 (1985)). Generally, the question of causation is for the jury to decide.[5] *Barrett v. Harris*, 207 Ariz. 374, 378, ¶ 12 (App. 2004). *See also Ring v. Arizona*, 536 U.S. 584, 600 (2002) (finding causation is an element "within the jury's province to decide").

### I. "But For" Causation

**¶13** Here, the State presented sufficient evidence from which a jury could conclude that, but for Dominguez' resisting arrest, the officer would not have used physical force to gain Dominguez' compliance, and would not have sprained his wrist. At trial, the officers testified that they commanded Dominguez to comply with the arrest and to stop resisting, but Dominguez did not heed their commands. One officer deployed her Taser to gain control of Dominguez, but he was not subdued. The officers then grabbed Dominguez, fell to the ground, hit Dominguez, and used the Taser twice more before they were able to handcuff and arrest him. The jury could reasonably conclude from this testimony that, but for Dominguez' actions, the officer would not have been injured.

### II. Proximate Cause

**¶14** The more difficult analysis is whether Dominguez' actions were the proximate cause of the officer's injury. To establish proximate cause, the difference between a defendant's intended result and the harm the victim actually suffered must not be "so extraordinary that it would be unfair to hold the defendant responsible for the result." *Marty*, 166 Ariz. at 237 (citing Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law*, § 3.12, at 390 (2d ed. 1986)). A finding of proximate cause thus hinges on foreseeability: whether it was foreseeable that a defendant's actions would cause the harm.[6] *Marty*, 166 Ariz. at 237.

---

[5] The Arizona Supreme Court has held the "criminal standard for superseding cause [is] . . . the same as our tort standard." *State v. Bass*, 198 Ariz. 571, 576, ¶ 13 (2000) (citing *Petolicchio v. Santa Cruz Cty. Fair & Rodeo Ass'n, Inc.*, 177 Ariz. 256 (1994)).

[6] The jury is in the best position to decide whether "a reasonable man could have foreseen that his actions" would cause the resulting harm.

¶15 A defendant will not be criminally liable if an unforeseeable and abnormal or extraordinary act (superseding act) interrupts the defendant's initial action and, instead, causes the victim harm. *Bass*, 198 Ariz. at 575-76, ¶¶ 11, 14. *But see Petolicchio*, 177 Ariz. at 263 (finding if "a defendant's actions increase the foreseeable risk of a particular harm occurring . . . that defendant is not relieved of liability" (citing *Ontiveros v. Borak*, 136 Ariz. 500, 506 (1983))); *United States v. Pineda-Doval*, 614 F.3d 1019, 1028-29 (9th Cir. 2010) (finding "[p]roximate cause is drawn more broadly when the intervening action was not a coincidence or unrelated to the defendant's prior conduct, but rather was a response to that conduct . . . [thus,] a police officer's conduct in pursuing a fleeing perpetrator, even if it was negligently performed and resulted in the death of the officer or a third party, is not deemed conduct so unusual, abnormal or extraordinary as to constitute a[] superseding cause").[7]

¶16 While the directly foreseeable harm likely to occur from Dominguez' resisting arrest, and the flailing of his arms and legs, was that he would kick or strike an officer, that was not the only foreseeable harm. It also was foreseeable that, by resisting arrest, Dominguez could cause any number of other injuries to the arresting officers. The fact that an officer was injured in a different manner, or suffered a different injury than Dominguez might have expected, does not relieve him of criminal liability. *See Petolicchio*, 177 Ariz. at 263 ("It is not necessary that Defendants foresaw the actual harm that occurred, only that harm could occur." (citation omitted)).

¶17 Further, we cannot say, on this record, that the officer's decision to try to subdue Dominguez by striking his head, causing the officer's sprained wrist, was an abnormal or extraordinary act that broke the chain of causation. Rather, it is foreseeable that officers may be injured when arresting an individual, especially if the individual is resisting arrest and officers have to use force to gain his compliance. In sum, there is

---

*Griffith v. Valley of Sun Recovery & Adjustment Bureau, Inc.*, 126 Ariz. 227, 230 (App. 1980).

7 We recognize that the distinction between an intervening act that breaks the chain of causation, such as a willful human intervention, and an intervening act that does not break the chain of causation, such as a human's reflective response to the defendant's wrongful act, is not always readily determinable. Frank G. Zarb, Jr., *Police Liability for Creating the Need to Use Deadly Force in Self-Defense*, 86 Mich. L. Rev. 1982, 1986-87 (1988).

sufficient evidence from which the jury could conclude that Dominguez caused the officer's injury by resisting arrest, and is thus guilty of aggravated assault.

## CONCLUSION

¶18 Dominguez' conviction and sentence are affirmed.

