666 P.2d 528

**Joseph A. SCHNYDER, Plaintiff-Appellee,**

**v.**

**EMPIRE METALS, INC., a corporation, Defendant-Appellant.**

**No. 1 CA–CIV 5643.**

Court of Appeals of Arizona, Division 1, Department C.

April 12, 1983.

Rehearing Denied June 1, 1983.

Review Denied June 30, 1983.

Evans, Kitchel & Jenckes by William G. Fairbourn and Randall S. Yavitz, Phoenix, for plaintiff-appellee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Larry L. Smith, Richard J. Woods, Phoenix, for defendant-appellant.

## OPINION

BROOKS, Judge.

An action in negligence was brought by plaintiff-appellee Joseph A. Schnyder (Schnyder) against defendant-appellant Empire Metals, Inc. (Empire) for injuries suffered by Schnyder when he fell from a utility pole. The jury returned a verdict in favor of Schnyder and the trial court entered judgment in accordance with the verdict.

The sole issue on appeal is whether the trial court erred in denying Empire's motion for a Directed Verdict and motion for Judgment Notwithstanding the Verdict. Empire contends on appeal, as it did before the trial court, that Schnyder's injuries arose from an event which was not a foreseeable consequence of Empire's alleged negligence.

We begin with the well-established proposition that on appeal from a judgment entered on a jury verdict, this court must consider the evidence in a light most favorable to the prevailing party and must give that party all reasonable inferences arising from that view of the evidence. *McFarlin v. Hall,* 127 Ariz. 220, 619 P.2d 729 (1980); *Harvey v. Kellin,* 115 Ariz. 496, 566 P.2d 297 (1977). Viewed in this manner, the facts are as follows.

Two witnesses testified concerning the liability-creating incident which occurred on October 18, 1974. One testified that he was looking out the window of his office when he saw a truck go by. After the truck passed, he noticed that the wires on a pole across the railroad tracks from his office were "twisting and turning, like they'd been snapped from the ground" and that the pole was swaying. The other witness testified that something brought his attention to the pole and that he turned around and saw the "pole moving a little, the wires flopping around." He testified that he went outside to see what was happening and saw a truck on the Empire property and a man in front of the truck who was opening a gate to the property. He testified that he saw no other vehicles in the vicinity of the pole. It is not argued that this evidence was insufficient to support a finding that Empire's driver negligently struck the pole.

On October 21, 1974, Schnyder was employed by Southern Pacific Railroad Company as a signal maintainer, which required him to maintain railroad signal apparatus. He was notified that there was a problem with a train signal which was continually showing a red light. Schnyder went to the site and noticed that eight wires were tangled on the pole in question which would have to be untangled. After putting climbing gaffs on his legs, he went to the top of the pole and straddled the cross-arm. Schnyder testified that the wires on the north side of the pole were wrapped extremely tight but that he was able to untangle them with the ground assistance of his supervisor. Schnyder then started to climb down the pole, but after he had taken eight to ten steps, he felt a "jerk" in the pole and was thrown to the ground.

Mr. Marshall Day appeared at trial as an expert witness on behalf of Schnyder. He

**430**

testified that when the pole, or the guy wire that retained the pole, was struck and jarred from its original position, the tangling of the wires arrested the pole's movement before it could regain its original position. In his opinion, the residual tension which was stored in the pole was then released three days later by the combined effect of the untangling of the wires and Schnyder's movement down the pole. He testified that Schnyder's downward movement could have caused the pole to snap back to its original position, thereby throwing Schnyder to the ground. None of the witnesses, including Mr. Day, were able to state that they had ever heard of an accident occurring in this manner.

On appeal, Empire argues that it would have been virtually impossible for its truck driver to have foreseen that striking the pole or its guy wire would tangle utility lines which would, in turn, result in the storing of tension, and that three days later, after the wires were untangled, a workman would be thrown to the ground as the pole jerked back to its energy-free position. It is argued that this sequence of events was an unforeseeable consequence and that Empire owed no duty to Schnyder under these circumstances.

Schnyder contends that it was foreseeable to a reasonable person that a collision with a utility pole could result in damage to the pole or its wires which would necessitate repairs. He further argues that he was within the foreseeable class of persons called upon to make the necessary repairs.

■ Both parties cite *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928), for the proposition that the scope of the risk created by one's conduct defines the group of potential plaintiffs to whom a duty is owed. As Judge Cardozo stated:

> The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. This does not mean, of course, that one who launches a destructive force is always relieved of liability, if the force, though known to be destructive, pursues

an unexpected path. "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinary prudent eye."

162 N.E. at 100 (citations omitted) (quoting *Munsey v. Webb,* 231 U.S. 150, 156, 34 S.Ct. 44, 45, 58 L.Ed. 162 (1913)). As in *Palsgraf,* the law of causation is not in issue in the case before us.

■ We initially find that Schnyder was not an unforeseeable plaintiff. Empire concedes that some danger directly related to untangling the wires might be a foreseeable risk created by the truck driver's conduct. Unlike Mrs. Palsgraf, Schnyder was clearly within the area of danger.

The issue which remains is whether the *manner* in which Schnyder was injured was a foreseeable consequence of the truck driver's conduct. Professor Prosser notes that there is perhaps no other one issue in the law of torts over which so much controversy has raged, and concerning which there has been so great a deluge of legal writing. W. Prosser, *The Law of Torts,* § 43 at 250 (4th ed. 1971).

> Our supreme court has held as follows: [B]efore liability may be imposed for an act, the prevision of a reasonable person must be able to recognize danger of harm to the plaintiff or one in plaintiff's situation. The risk which must be anticipated to convert an act into a wrong is a risk of harm not to anyone but to plaintiff or "to another or others within the range of apprehension."

*Tucker v. Collar,* 79 Ariz. 141, 146, 285 P.2d 178, 181 (1955) (quoting from *Palsgraf v. Long Island R. Co., supra* ).

■ It is not necessary that the exact manner in which the accident occurred could not have been foreseen if the injured person is within the foreseeable range of the negligent conduct and the injury results from a recognizable risk. *Paul v. Holcomb,* 8 Ariz.App. 22, 442 P.2d 559 (1968); Restatement (Second) of Torts, § 281 comment f (1965).

The difficulty lies in the meaning to be assigned to foreseeable risk. It has been noted that in determining whether certain events are within the risk created, the courts have been compelled of necessity to resort to hindsight rather than foresight. Restatement (Second) of Torts, § 281 comment g (1965). A *post hoc* step by step analysis, however, can render "foreseeable" almost anything that has in fact occurred. *Cf. Petition of Kinsman Transit Company,* 338 F.2d 708, 723 (1964). The courts have thus defined the foreseeable risk broadly:

> Not only is the concept of foreseeability itself elastic and capable of expansion, but also it is generally recognized that the particular manner in which the injury is brought about need not be foreseeable by any test. It has been well said, "The fact is, that the consequences of negligence are almost invariably surprises." This concept is an antidote to the requirement that plaintiff be injured by one of the dangers or risks that made defendant's conduct negligent. There is often no hard and fast line between the risk or hazard (which must be foreseeable) and the manner in which an accident happens (which need not be). The tendency of these two notions to pull in opposite directions, therefore, both invites the courts to define the risk or hazard broadly, and also gives courts a choice to treat the freak case on an individualized basis.

2 F. Harper and F. James, *The Law of Torts,* § 18.2 at 1026–27 (1956) (footnotes omitted) (quoting *Chavers v. A.R. Blossman,* 45 So.2d 398, 402 (La.App.1950)).

Our supreme court has similarly defined the term "foreseeable risk" broadly:

> The *Palsgraf* principle requires that liability be imposed only where both the plaintiff and the risk are foreseeable to a reasonable person. The holding here is that a broad view must be taken of the class of risks and victims that are foreseeable.

*McFarlin v. Hall,* 127 Ariz. 220, 222, 619 P.2d 729, 731 (1980).

■ In the first instance, the determination of whether the defendant owed to plaintiff any duty to use due care at all is always a question of law for the court. *Griffith v. Valley of the Sun Recovery and Adjustment Bureau, Inc.,* 126 Ariz. 227, 613 P.2d 1283 (App.1980). This issue is to be presented to the jury, however, where there is a debatable question as to whether the injury to the plaintiff was within the foreseeable scope of the risk and whether the defendant was required to recognize the risk and take precautions against it. *City of Scottsdale v. Kokaska,* 17 Ariz.App. 120, 495 P.2d 1327 (1972); *Paul v. Holcomb, supra;* Annot., 100 A.L.R.2d 942, 966 (1965).

■ We find that this is not the "freak case" which clearly indicates that a verdict should have been directed in favor of Empire. We cannot say, as a matter of law, that Schnyder was beyond the apparent scope of danger created by the conduct of Empire's truck driver and that a reasonable person would not be able to foresee a risk of harm to someone in Schnyder's position. As noted above, we must take a broad view of the class of risks and victims that are foreseeable, *McFarlin v. Hall, supra,* and the particular manner in which the injury is brought about need not be foreseeable. *Paul v. Holcomb, supra.* We find that Schnyder was clearly within the area of danger and was thus a foreseeable victim. Although it is a closer question, we further find that a debatable issue was presented as to whether the harm which resulted was within the risk created and the matter was thus properly submitted to the jury.

Judgment affirmed.

JACOBSON, P.J., and OGG, J., concur.