53 P.3d 196

Daniel BLOXHAM and Barbara Bloxham, husband and wife, individually and as surviving parents of James Bloxham, deceased; Diana Spalding, a single woman, individually and as surviving parent of Melisa Moniz, deceased, Plaintiffs/Appellants,

v.

GLOCK INC., a foreign corporation; Glock Ges m.b.H., a foreign corporation; McMann's Roadrunner, Inc., an Arizona corporation; Pat McMann and Joan McMann, husband and wife, Defendants/Appellees.

No. 2 CA–CV 2002–0012.

Court of Appeals of Arizona, Division 2, Department A.

Aug. 29, 2002.

Stompoly, Stroud & Glicksman, by Elliot Glicksman, Tucson, Law Office of Elisa Barnes, by Elisa Barnes, New York City, for plaintiffs/appellants.

Snell & Wilmer, L.L.P., by Timothy J. Casey and Martha E. Gibbs, Phoenix, Renzulli & Rutherford, L.L.P., by John F. Renzulli and Anthony M. Pisciotti, New York

City, for defendants/appellees, Glock Inc. and Glock Ges m.b.H.

Rusing & Lopez, P.L.L.C., by Michael J. Rusing and Sean E. Brearcliffe, Tucson, for defendants/appellees, McMann and McMann's Roadrunner, Inc.

## OPINION

### HOWARD, J.

¶ 1 Appellants Daniel Bloxham, Barbara Bloxham and Diana Spalding ("the Bloxhams"), sued appellees Glock Inc., Glock Ges m.b.H. ("Glock"), Pat McMann, Joan McMann, and McMann's Roadrunner Inc., ("the McManns") for negligence after a third party murdered the Bloxhams' son and Spalding's daughter ("the victims") with a handgun manufactured by Glock and sold at a gun show operated by the McManns. The trial court granted Glock's and the McManns' motions to dismiss the complaint for failure to state a claim, finding as a matter of law that there was no duty or proximate causation. Because the Bloxhams failed to allege facts justifying the court's imposing a duty on Glock and the McManns, we affirm the trial court's ruling.

¶ 2 On review of a motion to dismiss a complaint for failure to state a claim, we assume the allegations in the complaint are true. *Linder v. Brown & Herrick*, 189 Ariz. 398, 402, 943 P.2d 758, 762 (App.1997). Glock manufactured and sold a handgun to Centerfire, Inc., a retail outlet that sold handguns. Centerfire sold the gun to Stanley Woznicki, who had purchased over twenty handguns from Centerfire during the preceding twelve months. Woznicki frequently attended gun shows in Tucson operated by the McManns, and sold the Glock handgun to Kajornsak Prasertphong at a McMann gun show in Tucson in 1998.[1] In 1999, Prasertphong and another assailant used the gun to shoot and kill the victims.

¶ 3 In January 2001, the Bloxhams sued Glock and the McManns,[2] alleging they had been negligent and that such negligence was a cause of the victims' deaths because Glock had manufactured and distributed the handgun used in the killings but had failed "to impose distribution requirements," and because the McManns had failed to adequately screen gun sellers and buyers and regulate sales at their gun shows. Before answering the complaint, Glock and the McManns moved to dismiss it for failure to state a claim under Rule 12(b)(6), Ariz.R.Civ.P., 16 A.R.S., Pt. 1, claiming they had no duty to control the conduct of third parties or to protect the victims.

¶ 4 In response, the Bloxhams argued that Glock had breached a duty "to take reasonable and practical steps to control the distribution of [its] products so that Glock pistols were not sold to unlicensed dealers or at gun shows" and that this breach of duty had caused the victims' deaths. And the Bloxhams argued the McManns had breached their duty to "take reasonable and practical steps to prevent the prohibited transfer of the gun used in the shootings of [the victims] based on the foreseeable risks associated with their business and by their own voluntary assumption of a duty to prevent such foreseeable harm." The Bloxhams stated that the McManns had required that any guns taken to one of their shows be inspected to assure the guns were unloaded, that any person with a gun be asked not to sell it to anyone other than exhibitors with booths, and that anyone found violating this policy be warned once and then asked to leave. According to the Bloxhams, this policy was insufficient to prevent unlicensed sales of firearms at their shows. However, the Bloxhams did not allege the McManns knew or should have known that Woznicki may have been required to have a license or that either

---

1. The parties dispute whether the Woznicki–Prasertphong transaction was truly illegal. If Woznicki was "engage[d] in the business" of selling firearms, he was required to have a federal license. *See* 18 U.S.C. § 923(a). When Prasertphong purchased the gun from Woznicki, Prasertphong was under twenty-one years of age and could not legally purchase a handgun from a licensed firearms dealer, *see* 18 U.S.C. § 922(b)(1), but, at eighteen years of age or older, could legally purchase a handgun from a private citizen. *See* A.R.S. § 13–3109.

2. Centerfire and Woznicki were named as defendants in the complaint but are not parties on appeal.

Glock or the McManns had committed any illegal act or had participated in the Woznicki–Prasertphong transaction.

¶5 After oral argument, the trial court granted Glock's and the McManns' motions,[3] concluding the Bloxhams had failed to allege a valid negligence claim. According to the trial court, the Bloxhams' complaint failed to state the requisite element of duty because they had failed to allege and the court could not find there was "the special kind of relationship between either Glock or the McManns to control the action of Prasertphong or protect" the victims. Additionally, the court found that, regardless of duty, any alleged negligence "was not the proximate cause of Plaintiffs' injuries." The Bloxhams appeal the trial court's ruling.

■ ¶6 We first decide whether the trial court erred in finding that the complaint failed to allege facts establishing a legal duty on Glock or the McManns. In an action for negligence, a plaintiff must show "the existence of duty, breach of that duty, causation, and damages." *Saucedo ex rel. Sinaloa v. Salvation Army*, 200 Ariz. 179, ¶14, 24 P.3d 1274, ¶14 (App.2001). "The question of duty ... is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). "The existence of duty is a threshold issue that is usually decided by the trial court as a matter of law, subject to our de novo review." *Republic Nat'l Bank v. Pima County*, 200 Ariz. 199, ¶11, 25 P.3d 1, ¶11 (App.2001). In the absence of a duty owed to the plaintiff, a defendant "cannot be liable for the plaintiff's injury even if the defendant acted negligently." *Rudolph v. Arizona B.A.S.S. Fed'n*, 182 Ariz. 622, 624, 898 P.2d 1000, 1002 (App.1995).

■ ¶7 In Arizona, there is no duty to control the conduct of a third party unless

" '(a) a special relation exists between the [defendant] and the third person which imposes a duty upon the [defendant] to control the third person's conduct, or (b) a special relation exists between the [defendant] and the [plaintiff] which gives to the [plaintiff] a right of protection.' " *Martinez v. Woodmar IV Condominiums Homeowners Ass'n*, 189 Ariz. 206, 207–08, 941 P.2d 218, 219–20 (1997), *quoting Martinez v. Woodmar IV Condominiums Ass'n*, 187 Ariz. 408, 409, 930 P.2d 485, 486 (App.1996), *quoting* Restatement (Second) of Torts § 315 (1965) (brackets added by supreme court); *Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 265, 782 P.2d 739, 741 (App.1989). Therefore, a duty to control the conduct of a third party arises only when a special relationship exists between the defendant and the third party, such as "parent-child, master-servant, possessor of land-licensee, or guardian-ward." *Fedie*, 162 Ariz. at 265, 782 P.2d at 741; *see also* Restatement (Second) of Torts §§ 316–319. And a duty to protect arises only where there is a special relationship between the defendant and the victim, "such as carrier-passenger, innkeeper-guest, landlord-invitee, guardian-ward, teacher-student, or jailer-prisoner." *Fedie*, 162 Ariz. at 265, 782 P.2d at 741; *see also* Restatement (Second) of Torts §§ 314A, 320; *Martinez*.

■ ¶8 Glock and the McManns argue the complaint fails to allege any special relationship between Glock and the McManns and either the murderers or the victims, and the Bloxhams do not argue otherwise. But the Bloxhams contend they in fact have stated a claim "sounding in negligence," arguing Glock and the McManns had a duty "to use reasonable care in marketing, distributing and facilitating the sale of" guns. The Bloxhams argue that Glock should have controlled its distributors and that the McManns should have controlled Woznicki and Prasertphong. The substance of each allegation is that Glock and the McManns should have

---

**3.** Although the Bloxhams submitted matters extrinsic to the pleadings in responding to the motions to dismiss, thus potentially making the trial court's ruling a summary judgment under Rule 56(c), Ariz.R.Civ.P., 16 A.R.S., Pt. 2, *see* Rule 12(b)(6), Ariz.R.Civ.P., 16 A.R.S., Pt. 1, the trial court stated in its minute entry that it "con-sider[ed] the motions on the pleadings only." Accordingly, we treat the ruling as one under Rule 12(b)(6) based on the complaint. Furthermore, because the Bloxhams did not move to amend their complaint, we consider only the facts originally alleged in it.

controlled the conduct of a third party or protected the victims. Accordingly, to be viable, the Bloxhams' claim required the allegation of a special relationship between Glock and the McManns and a third party or between Glock and the McManns and the victims. *See* Restatement § 315; *Martinez; Fedie.* In the absence of a special relationship, which was not alleged here, there was no duty that can sustain a negligence claim. *See Saucedo.* "We do not understand the law to be that one owes a duty of reasonable care at all times to all people under all circumstances." *Hafner v. Beck,* 185 Ariz. 389, 391, 916 P.2d 1105, 1107 (App.1995).

■ ¶ 9 Nevertheless, the Bloxhams argue we should follow a "totality of evidence" approach and impose a duty here, even in the absence of a special relationship. "Duty" essentially is " 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " *Ontiveros v. Borak,* 136 Ariz. 500, 508, 667 P.2d 200, 208 (1983), *quoting* W. Prosser, *Handbook on the Law of Torts* § 42, at 324–27 (4th ed.1971). In the context of sales of firearms, one court, espousing a "Duty Equation," recently expressed the factors to consider in determining whether to impose a duty of care on firearms manufacturers:

> Courts traditionally "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability."

*Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055, 1060 (2001), *quoting Palka v. Servicemaster Management Servs. Corp.,* 83 N.Y.2d 579, 611 N.Y.S.2d 817, 634 N.E.2d 189, 193 (1994).

■ ¶ 10 The "sum total" of policy considerations, *see Ontiveros,* leads us to conclude that we should not extend to Glock and the McManns, who are not alleged to have broken any laws or regulations and did not participate in the transaction that resulted in Prasertphong's obtaining the handgun, a duty to control all sales at gun shows by third parties to third parties. The "reasonable expectations" of society, *see Hamilton; Palka,* are expressed to an extent in the case law requiring a special relationship in cases like this. And the Bloxhams have presented no cogent reason to depart from those cases. Furthermore, in a separate context, the legislature has declared its expectation that firearms manufacturers and dealers "should not be liable for the harm caused by those who unlawfully misuse firearms or ammunition." A.R.S. § 12–714(B)(3).[4] Although not binding on this court in the present context, such a declaration deserves considerable weight as a legislative expression of public policy.

¶ 11 Moreover, the firearms industry is highly regulated by the federal and state governments. *See* 18 U.S.C. §§ 921 through 930; A.R.S. §§ 13–3101 through 13–3116. Imposing potential tort liability in a case such as this, which involves no regulatory violations, could ultimately conflict with firearms regulations. We also consider that manufacturers and gun show operators are generally remote from an actual transaction between third parties. *See Hamilton,* 727 N.Y.S.2d 7, 750 N.E.2d at 1061–62 ("[T]he connection between [gun manufacturers], the criminal wrongdoers and plaintiffs is remote, running through several links in a chain consisting of at least the manufacturer, the federally licensed distributor or wholesaler, and the first retailer."). And, as here, third parties often can legally obtain handguns from private individuals or illegally on the street, and, therefore, imposing additional liability on manufacturers and gun show operators would not have a protective effect. Additionally, imposing a duty in this case could conceivably result in gun manufacturers' and gun show promoters' being held accountable as insurers for any damages resulting from gun usage. *See Hamilton.*

---

4. This statute precludes political subdivisions of the state from commencing civil actions against gun manufacturers, sellers, or trade organizations for damages arising from unlawful misuse of guns by third parties.

¶ 12 Finally, we note that other courts faced with similar issues have almost uniformly refused to impose any duty on businesses related to the legal use and distribution of firearms owed to those harmed by the misuse of those firearms.[5] As a result, under the facts of this case, we see no public policy necessitating the imposition of a duty from the McManns or Glock to the Bloxhams.

¶ 13 The Bloxhams nonetheless argue we should extend to the present case the holding in *Martinez*, in which our supreme court ruled that a landlord might be liable for the criminal acts of third parties committed against persons who were guests on the landlord's property. The court premised liability on the "[d]efendant's duty as possessor of common areas used by its owners and their guests." 189 Ariz. at 208, 941 P.2d at 220. The Bloxhams suggest that this theory of liability in *Martinez* might apply to the McManns "as quasi landlords of the gun show." But the victims were not tenants or guests of the McManns in any sense, and no relationship existed between them. And the plaintiff in *Martinez* was harmed while on the defendant's property, but the victims here were not. In light of these salient distinctions, we decline to extend the liability theory in *Martinez* to the present case. Moreover, although the defendant in *Martinez* had a duty as a possessor of land, the court added that the defendant "had no [Restatement] § 315 responsibility or duty to control" the third party who shot the plaintiff. *Id.* Accordingly, *Martinez* actually supports the McManns' position.

¶ 14 The Bloxhams also rely on *Hamilton*, arguing that "handgun manufacturers and sellers have a duty to market and distribute their products carefully." But *Hamilton* on its face is unfavorable to the Bloxhams and actually supports Glock and the McManns. The court there addressed "[w]hether the defendants owed plaintiffs a duty to exercise reasonable care in the marketing and distribution of the handguns they manufacture." 727 N.Y.S.2d 7, 750 N.E.2d at 1059. Holding that gun manufacturers do not owe a duty of care to persons injured as a result of the illegal use of handguns, the court reasoned that "broad liability, potentially encompassing all gunshot crime victims, should not be imposed without a more tangible showing that defendants were a direct link in the causal chain that resulted in plaintiffs' injuries, and that defendants were realistically in a position to prevent the wrongs." *Id.* at 1062. Accordingly, the Bloxhams' reliance on *Hamilton* is misplaced.

¶ 15 Regardless of their failure to allege a special relationship, the Bloxhams suggest that the "foreseeable risks" associated with gun sales might give rise to a duty. However, "foreseeable danger d[oes] not dictate the existence of duty but only the nature and extent of the conduct necessary to fulfill the duty." *Martinez*, 189 Ariz. at 211, 941 P.2d at 223. Hence, regardless of the "foreseeable victims" of Glock's alleged failure to exercise "supervisory control and set terms for the point of initial sale" and the McManns' alleged failure to exercise "control over Woznicki in restricting his ability to use the gun show to ... consummate illegal transactions with underage purchasers," in

5. *See, e.g., Bennet v. Cincinnati Checker Cab Co.,* 353 F.Supp. 1206 (E.D.Ky.1973) (no duty owed when no special relationship between gun manufacturer and person injured by misuse of gun); *First Commercial Trust Co. v. Lorcin Eng'g, Inc.,* 321 Ark. 210, 900 S.W.2d 202, 205 (1995) (no duty owed when "no special relationship exist[ed] between [defendant] ... or the ultimate purchaser of its handgun"); *Delahanty v. Hinckley,* 564 A.2d 758 (D.C.1989) (no duty owed to victims of criminal use of guns when no special relationship alleged with gun manufacturers); *Riordan v. International Armament Corp.,* 132 Ill.App.3d 642, 87 Ill.Dec. 765, 477 N.E.2d 1293, 1295 (1985) ("[N]o common law duty exists upon the manufacturer of a nondefective handgun to control the distribution of that product to the general public."); *Valentine v. On Target, Inc.,* 353 Md. 544, 727 A.2d 947, 953 (1999) (inherent danger of guns "does not create a duty of gun dealers to all persons who may be subject [to] harm" from illegal use of guns); *Resteiner v. Sturm, Ruger & Co.,* 223 Mich.App. 374, 566 N.W.2d 53, 56 (1997) (White, J., concurring in part, dissenting in part) ("[W]here there are no special relationships, and the victims were fatally injured in a criminal assault by a third person involving [the defendant's] stolen weapon, [the defendant] had no duty to protect the victims from harm."); *Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001) (manufacturers of handguns owe no duty of care in marketing and distributing their products to persons injured by criminal use of guns).

the absence of an existing duty, foreseeability is inconsequential. Because foreseeability of harm does not in itself give rise to a duty, the Bloxhams still failed to allege the elements of negligence. *See Riddle v. Arizona Oncology Serv., Inc.*, 186 Ariz. 464, 466–67, 924 P.2d 468, 470–71 (App.1996).

¶ 16 And, although the Bloxhams claim that *Crown v. Raymond*, 159 Ariz. 87, 764 P.2d 1146 (App.1988), establishes that defendants may be "held liable for the foreseeable risks of their negligence with regard to their dangerous products," *Crown* differs markedly from the present case. There, a gun shop owner, in violation of state and federal law, sold a handgun to a seventeen-year-old minor, who used the gun to commit suicide. This court found the violation of the gun statutes to be negligence per se and determined that, in the face of an existing duty to obey the gun laws, the harm to the minor was foreseeable. Although the Bloxhams alleged that Woznicki violated state and federal laws in selling the gun to Prasertphong, the Bloxhams did not allege that either Glock or the McManns violated the law. *Crown* is thus inapposite.

¶ 17 The Bloxhams also argue that *Petolicchio v. Santa Cruz County Fair and Rodeo Ass'n, Inc.*, 177 Ariz. 256, 866 P.2d 1342 (1994), establishes that Arizona courts look "beyond artificial categories to find a duty where the defendant has the ability to take reasonable steps to prevent the foreseeable harm." In *Petolicchio*, an employee of the defendant stole liquor from the defendant and furnished the alcohol to a minor, who drove under the influence and crashed his automobile, killing the plaintiffs' son, a passenger in the vehicle. Before the accident, law enforcement officials had warned the employee's mother, who also worked for the defendant and managed its liquor inventory, that her son had been using her keys to steal the defendant's liquor and furnish it to minors, but she did nothing to stop him. Our supreme court held that, under those facts, "a licensee [the defendant] storing alcohol has a duty to exercise reasonable care to guard that substance from those who will foreseeably endanger the public by its use." *Id.* at 262, 866 P.2d at 1348.

¶ 18 The party in *Petolicchio* that unlawfully provided alcohol to the third party was an employee of the defendant, as was the employee's mother, who was warned by law enforcement officials of her son's stealing the alcohol. Here, there is no such relationship between Woznicki, who furnished the gun to Prasertphong, and Glock or the McManns. Further, the Bloxhams have not alleged that any person was warned that Prasertphong was dangerous. Moreover, the court in *Petolicchio* found support in cases that imposed a duty on defendants based on the state statutory prohibition against furnishing alcohol to minors, and "believ[ed] [that] the present case merit[ed] a similar analysis." *Id.* at 262, 866 P.2d at 1348. And, as previously stated, the Bloxhams have not alleged that Glock or the McManns participated in the Woznicki–Prasertphong transaction or in any illegal activity. Accordingly, we are faced with no cases presenting a "similar analysis." Finally, the court in *Petolicchio* limited its holding to the facts before it, and we are faced with dissimilar facts in the present case.

¶ 19 Finally, the Bloxhams rely on *Pavlides v. Niles Gun Show, Inc.*, 93 Ohio App.3d 46, 637 N.E.2d 404 (1994), which held that foreseeable risks can give rise to a duty by gun show operators to prevent minors from acquiring guns. In Arizona, however, as stated above, foreseeability alone does not dictate duty, *see Martinez; Markowitz; Riddle*, and *Pavlides* in no way alters this rule. And to the extent that the Ohio court might be willing to impose liability on a gun show operator in the present circumstances, we disagree with it.

¶ 20 At oral argument, the Bloxhams, in effect, requested that this court specify the standard of care required of gun show operators and gun manufacturers, without our first determining whether a duty exists. But, having determined that no duty exists under the facts alleged here, there is no applicable standard of care. And having concluded that the Bloxhams failed to state a claim, we need not address their argument that the trial court erred in ruling there was no proximate cause.

¶ 21 The trial court's ruling is affirmed.

J. WILLIAM BRAMMER, JR., Presiding Judge, and M. JAN FLÓREZ, Judge, concurring.