129 P.3d 957

**Susan GIPSON, individually and as surviving parent of Nathan Kim Followill, deceased, Plaintiff/Appellant,**

v.

**Larry KASEY and Jane Doe Kasey, a married couple, Defendants/Appellees.**

No. 1 CA–CV 05–0119.

Court of Appeals of Arizona, Division 1, Department C.

March 2, 2006.

236

James F. Brook and Associates, James F. Brook, John N. Vingelli, Scottsdale, Attorneys for Appellant.

The Cavanagh Law Firm, R. Corey Hill, Ginette M. Hill, Christopher Robbins, Phoenix, Attorneys for Appellees.

## OPINION

GEMMILL, Judge.

¶ 1 Petitioner Susan Gipson is the surviving parent of decedent Nathan Followill. Gipson filed a wrongful death action against defendant Larry Kasey pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–612 and –613 (2003), alleging that Kasey negligently caused Followill's death by furnishing prescription Oxycontin pills to Followill. The trial court granted Kasey's motion for summary judgment, from which Gipson appeals. We conclude that Kasey owed Followill a duty of reasonable care and that Kasey is not entitled to summary judgment on the issue of proximate cause. We therefore reverse the summary judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In reviewing a decision on a motion for summary judgment, we view the facts and reasonable inferences to be drawn from those facts in a light most favorable to the party against whom judgment was entered. *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 496, ¶ 2, 88 P.3d 565, 566 (App.2004). The pertinent facts, viewed most favorably to Plaintiff Gipson, are as follows.

¶ 3 Kasey and Followill were employees of Streets of New York Pizza. On December 16, 2002, Kasey, Followill, and Followill's girlfriend, Sandy Watters, attended an employee Christmas party at one of the Streets of New York restaurants. An "open beer bar" was provided.

¶ 4 Kasey possessed a quantity of prescription pain pills. On prior occasions, he had provided some of these pills to various young employees of Streets of New York Pizza, apparently for recreational purposes.[1] During the party Watters asked Kasey for one of his pain pills. Kasey knew that Watters and Followill were dating, and he had socialized with them previously. In response to Watters' request, Kasey gave her eight pills and told her only that he was giving her two different strengths of pills. He did not tell Watters the name of the pills, the proper dosage to take, nor did he give her any instructions or warnings about mixing the pills with alcohol. The pills were Oxycontin, which is the trade name for the controlled-release form of Oxycodone.

¶ 5 Watters told Followill that Kasey had given her eight pain pills. Followill took the pills from Watters. That evening Followill told Brian Watters that he had gotten pills from Kasey. Brian saw two pills in Followill's possession-one that had dropped on the floor and one in Followill's hand. Kasey later testified that Followill had asked him on three prior occasions for pain pills, but Kasey had declined to give him any because Kasey thought he was "too stupid and immature to take drugs like that."

¶ 6 During the party Kasey provided shots of Crown Royal whiskey to several people attending the party, including Followill. Kasey also offered a shot of Crown Royal to Watters after he had given her the eight pills.

¶ 7 Throughout the evening Followill became increasingly intoxicated. Followill told a friend that "Kasey's pills were f* * *ing [me] up."

¶ 8 Watters and Followill left the party at approximately 1:00 a.m. and Followill went to bed around 2:00 a.m. The next morning, Watters could not awaken Followill and discovered he had died in his sleep. According to the Maricopa County Medical Examiner's report, Followill's cause of death was "acute com-

---

1. Kasey denies having Oxycontin or Oxycodone with him at the party and denies offering his pills to anyone at the party. For purposes of his motion for summary judgment, however, Kasey agrees that Gipson produced some evidence to indicate that Kasey gave Oxycontin pills to Watters the night of the party.

bined toxicity of alcohol and Oxycodone." A forensic toxicologist opined that the level of Oxycodone in Followill's system was consistent with ingestion of six Oxycontin pills. The expert also explained that the Oxycodone in Followill's system, combined with the alcohol, was the cause of Followill's death. The alcohol alone would not have been fatal.

¶ 9 As the surviving parent of Followill, Gipson filed a wrongful death action against Kasey. After initial discovery, Kasey filed a motion for summary judgment. He argued that as a matter of law, he owed no duty of care to Followill and his conduct was not a proximate cause of Followill's death. The trial court granted Kasey's motion for summary judgment, explaining:

> IT IS ORDERED granting Defendant's Motion for Summary Judgment. The Doctrine of Negligence Per Se does not apply because the decedent, Mr. Followill harmed himself by ingesting the pills. This distinguishes case law discussing situations where an innocent third party is harmed. The Court also determines that the Defendant had no special relationship with the decedent. The Defendant gave the pills to Sandy Watters. Therefore, two acts intervened after the Defendant's act of giving the pills[:] I. Sandy Watters chose to give some of the pills to the decedent. II. The decedent chose to take the pills after consuming alcohol.

¶ 10 Gipson filed a motion for reconsideration, which was denied. The trial court entered final judgment and Gipson appeals. We have jurisdiction pursuant to A.R.S. §§ 12–2101(B) and –120.21(A)(1) (2003).

## ANALYSIS

¶ 11 Gipson's wrongful death claim against Kasey is based on his alleged negligence in providing Oxycodone pills to Followill, either directly or through Watters. A plaintiff may maintain a negligence action if she proves duty, breach of duty, proximate cause, and damages. *See Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). Kasey argued in his motion for summary judgment, and the trial court agreed, that Kasey could not be liable to Gipson because he owed no duty to Followill and

also because Kasey's conduct did not proximately cause Followill's death.

### Duty

¶ 12 We review *de novo* the trial court's ruling on the existence of duty in a negligence action. *See Martin v. Schroeder,* 209 Ariz. 531, 536, ¶ 20, 105 P.3d 577, 582 (App.2005). The issue of duty is usually determined by the court as a matter of law. *Markowitz v. Ariz. Parks Bd.,* 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985).

¶ 13 " '[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty [if it exists] is always the same-to conform to the legal standard of reasonable conduct in the light of the apparent risk." *Coburn v. City of Tucson,* 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 356 (5th ed.1984)). "The question of duty . . . is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz,* 146 Ariz. at 356, 706 P.2d at 368. A defendant who does not owe a duty to a plaintiff cannot be liable for the plaintiff's injury even if the defendant acted negligently. *Mack v. McDonnell Douglas Helicopter Co.,* 179 Ariz. 627, 629, 880 P.2d 1173, 1175 (App.1994). We must determine whether Kasey owed a duty of care to Followill.

¶ 14 Kasey argues that he owed no duty to Followill because they had no direct relationship from which a duty could arise. He contends that he did not give pain pills directly to Followill and that he and Followill were "simply two people attending the same holiday party."

¶ 15 We conclude, on this record, that Kasey owed a duty to Followill when he gave the pills to Watters. Our recognition of a duty is based on the totality of the circumstances as reflected in the following factors: (1) the relationship that existed between Kasey and Followill, (2) the foreseeability of harm to a foreseeable victim as a result of Kasey giving eight pills to Watters, and (3)

the presence of statutes making it unlawful to furnish one's prescription drugs to another person not covered by the prescription.

¶ 16 First, recognition of a duty here is supported by the relationship between Kasey and Followill. They were co-workers and friends; they had socialized previously; Followill had asked Kasey for pills in the past; and Kasey knew that Followill and Watters were dating and were together at the party.

¶ 17 Second, recognition of a duty here is supported by a consideration of foreseeability. Although Kasey contends otherwise, we conclude that foreseeability is a factor in determining duty. *See Alhambra Sch. Dist. v. Superior Court,* 165 Ariz. 38, 42, 796 P.2d 470, 474 (1990) (finding school district owed duty to foreseeable user of marked crosswalk); *Rager v. Superior Coach Sales & Serv. of Ariz.,* 111 Ariz. 204, 210, 526 P.2d 1056, 1062 (1974) ("Whether or not there is a duty on the part of the defendant to protect the plaintiff from the injury of which he complains is based on foreseeability."); *Riddle v. Ariz. Oncology Servs., Inc.,* 186 Ariz. 464, 466, 924 P.2d 468, 470 (App. 1996) ("As plaintiff correctly notes, foreseeability of harm appears to be an element of duty under Arizona case law."); *Fedie v. Travelodge Int'l, Inc.,* 162 Ariz. 263, 266, 782 P.2d 739, 742 (App.1989) ("One element of duty is foreseeability."); *City of Scottsdale v. Kokaska,* 17 Ariz.App. 120, 124–27, 495 P.2d 1327, 1331–34 (1972) (explaining that foreseeability is a factor in determining duty).

¶ 18 Kasey cites *Martinez v. Woodmar IV Condominiums Homeowners Association,* 189 Ariz. 206, 211, 941 P.2d 218, 223 (1997) and its progeny. These cases suggest that foreseeability is no longer a factor in determining duty under Arizona law. *See Martin,* 209 Ariz. at 535–36, ¶ 18, 105 P.3d at 581–82; *Collette v. Tolleson Unified Sch. Dist. No. 214,* 203 Ariz. 359, 363, ¶ 13, 54 P.3d 828, 832 (App.2002); *Bloxham v. Glock Inc.,* 203 Ariz.

271, 276–77, ¶ 15, 53 P.3d 196, 201–02 (App. 2002); *Knauss v. DND Neffson Co.,* 192 Ariz. 192, 196, 963 P.2d 271, 275 (App.1997). There may be some variance in Arizona appellate cases regarding the role of foreseeability as a factor in determining duty.[2] And there are situations in which foreseeability plays little or no role in determining duty. For example, in *Martinez,* our supreme court explained that a possessor of land owes a duty of reasonable care to those on the land with permission and therefore the foreseeability of harm to a particular person does "not dictate the existence of duty but only the nature and extent of conduct necessary to fulfill the duty." 189 Ariz. at 211, 941 P.2d at 223. The duty of care exists because of the relationship of the possessor of land to the person on the land. But we do not perceive that *Martinez* and its progeny should be read so broadly as to rule out, under all circumstances, the role of foreseeability in supporting the existence of a duty. As explained in *Riddle,* foreseeability of harm is an element to consider in determining the existence of a duty even though the existence of a duty does not "totally hinge" on foreseeability. 186 Ariz. at 466, 924 P.2d at 470.

¶ 19 In determining whether Kasey's duty extended to Followill, we are also mindful that courts take a broad view of the class of risks and the class of victims that are foreseeable. *See Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 187, 677 P.2d 1292, 1295 (1984); *McFarlin v. Hall,* 127 Ariz. 220, 222, 619 P.2d 729, 731 (1980); *Rudolph v. Ariz. B.A.S.S. Fed'n,* 182 Ariz. 622, 624, 898 P.2d 1000, 1002 (App.1995); *Schnyder v. Empire Metals, Inc.,* 136 Ariz. 428, 430–31, 666 P.2d 528, 530–31 (App.1983). Moreover, "[i]t is not necessary that the exact manner in which the accident occurred could not have been foreseen if the injured person is within the foreseeable range of the

---

2. Our colleagues in Division Two have commented on the apparent inconsistency of appellate pronouncements on this issue. In *Riddle,* the court stated: "There is some confusion and lack of clarity in Arizona law, however, as to what extent, if any, foreseeability issues bear on the initial legal determination of duty." 186 Ariz. at 466–67 n. 3, 924 P.2d at 470–71. And in

*Knauss,* the court stated: "Based on our reading of *Martinez,* foreseeability is not a relevant factor in the threshold legal determination of duty. If our interpretation is correct, however, that proposition seems to conflict with prior pronouncements of the supreme court and court of appeals." 192 Ariz. at 196 n. 4, 963 P.2d at 275.

negligent conduct and the injury results from a recognizable risk." *Schnyder*, 136 Ariz. at 430, 666 P.2d at 530.

■ ¶ 20 Was Followill a foreseeable victim of Kasey's alleged negligence in giving Watters eight pills when she had asked for one? Kasey knew the pills were not prescribed for anyone else, and he knew that they could be dangerous if taken in overdose or in combination with alcohol. For the purpose of determining the existence of a duty, we conclude that on these facts it was foreseeable to Kasey that some of the eight pills he gave to Watters might be given by her to Followill and thereafter consumed by Followill.[3] "The 'definition of a reasonably foreseeable event is an event that might reasonably be expected to occur now and then, and would be recognized as not highly unlikely if it did suggest itself to the actor's mind.'" *Tellez v. Saban*, 188 Ariz. 165, 172, 933 P.2d 1233, 1240 (App.1996) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 44, at 307 (5th ed.1984)). Accordingly, our recognition of a duty in this context is based in part on the foreseeability of harm to a foreseeable victim, Followill.

■ ¶ 21 Third, recognition of a duty in this case is supported by state and federal statutes. Our supreme court recently explained that when determining "whether a duty exists, courts examine several sources, including the state's statutes and controlling cases." *Stanley v. McCarver*, 208 Ariz. 219, 221, ¶ 6, 92 P.3d 849, 851 (2004). Similarly, the supreme court has explained that the "existence of a statute criminalizing conduct is one aspect of Arizona law supporting the recognition" of a duty. *See Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253, 866 P.2d 1330, 1339 (1994); *see also*

*Ontiveros*, 136 Ariz. at 509, 667 P.2d at 209 ("Even if the existence of a tavern owner's duty to act with care when furnishing liquor to patrons could not be found by application of common law principle and authority, its existence could be postulated upon the affirmative requirements of statute."); Restatement (Second) of Torts § 286 cmt. d (1965).[4] This court has also stated that a "duty of care and the attendant standard of conduct can ... be found in a statute even though the statute is silent on the issue of civil liability." *Carrillo v. El Mirage Roadhouse, Inc.*, 164 Ariz. 364, 369, 793 P.2d 121, 126 (App.1990).

¶ 22 Several Arizona statutes prohibit distributing prescription drugs to people who have not been prescribed the drug. A.R.S. § 36–2531(A)(6) (2003) provides in pertinent part:

It is unlawful for any person ... [t]o intentionally or knowingly sell, buy, exchange or give away any preparation subject to § 36–2516,[5] unless the preparation is to be used for a legitimate medical purpose and in compliance with this chapter.

A.R.S. § 32–1961(A) (2002) provides in pertinent part:

It is unlawful for any person to ... dispense any drugs or to dispense ... the prescription orders of a medical practitioner, unless he is a pharmacist or a pharmacy intern acting under the direct supervision of a pharmacist....

A.R.S. § 13–3408(A)(5) (Supp.2005) provides in pertinent part:

A person shall not knowingly ... [a]dminister [6] a narcotic drug [7] to another person.

¶ 23 Additionally, in 1970, Congress enacted the Controlled Substances Act ("CSA")

---

3. Our conclusion pertains only to the legal determination of duty and does not resolve any fact question regarding foreseeability with respect to whether a superseding cause may exist.

4. We thus reject Kasey's argument that criminal statutes are not applicable when evaluating whether a duty exists.

5. Opium in certain quantities is subject to § 36–2516(1)(e) (Supp.2005) and Oxycodone is included within the category of opium and opiates in A.R.S. § 36–2513(A)(1)(a)(xiv) (Supp.2005).

6. " 'Administer' means to apply, inject or facilitate the inhalation or ingestion of a substance to the body of a person." A.R.S. § 13–3401(1) (Supp.2005).

7. Oxycodone is listed under A.R.S. § 13–3401(21)(dd) as an "Opium." Opium is classified under A.R.S. § 13–3401(20)(iii) as a "Narcotic drug."

which provides a comprehensive federal scheme for regulation and control of certain drugs and other substances. *See* 21 U.S.C. §§ 801–904 (2000). The CSA makes it unlawful for any person to distribute any controlled substance except as authorized by the CSA.[8] 21 U.S.C. § 841(a)(1). The proscription in section 841 applies to any person "[e]xcept as authorized by this subchapter" such as physicians registered with the Attorney General. *See* 21 U.S.C. § 822.

¶ 24 These statutes are designed to avoid injury or death to people who have not been prescribed prescription drugs, who may have no medical need for them and may in fact be endangered by them, and who have not been properly instructed on their usage, potency, and possible dangers. Such legislative enactments, and the public policy expressed by them, strongly support recognition of a duty on the part of Kasey to Followill. *See Alhambra Sch. Dist.*, 165 Ariz. at 42, 796 P.2d at 474 ("The relationship that gives rise to a duty of care may also be created by statute."); *Ontiveros*, 136 Ariz. at 511, 667 P.2d at 211 ("We conclude, therefore, that the legislative enactment imposes an obligation upon tavern owners and that the particular obligation under consideration is one which was intended partly for the safety of others. We therefore recognize the duty described in that statute as a duty imposed by statute and adopted by the common law.").

¶ 25 Kasey contends that Gipson is essentially arguing that Kasey had a duty to control the conduct of Watters and under the "duty to control" cases there can be no duty without a "special relationship" between either Kasey and Watters or Kasey and Followill. And because no "special relationships" exist here, Kasey asserts that there is no duty. *See Wertheim v. Pima County*, 211 Ariz. 422, 424–25 ¶¶ 11–14, 122 P.3d 1, 3–4

(App.2005); *Martin*, 209 Ariz. at 533, ¶ 7, 105 P.3d at 579; *Bloxham*, 203 Ariz. at 274, ¶ 7, 53 P.3d at 199; and *Collette*, 203 Ariz. at 363, ¶ 13–14, 54 P.3d at 832. But these cases are not applicable here for several reasons.

¶ 26 First, Gipson has not alleged that Kasey owed a duty to control Watters and we do not agree that Gipson's allegations may be re-characterized in this manner. Second, in the "duty to control" cases, the defendants usually had no relationship with the injured party, but here, Kasey and Followill had a relationship. Third, in *Martin* and *Bloxham*, the defendants' conduct involved selling, transferring, or giving a gun to another person-conduct that was entirely legal. But Kasey's alleged act of providing eight prescription pills to Watters was illegal. Fourth, unlike the defendants in *Martinez* and *Collette* who were accused of *nonfeasance*, it is Kasey's alleged *misfeasance* that set in motion the dangerous sequence of events that led to Followill's death. *See Bogue v. Better–Bilt Aluminum Co.*, 179 Ariz. 22, 34, 875 P.2d 1327, 1339 (App.1994) (recognizing distinction between nonfeasance and misfeaseance in determining whether a duty may exist).

¶ 27 For these reasons, we conclude on this record that Kasey owed Followill a duty of reasonable care.[9]

## Proximate Cause

¶ 28 Kasey's summary judgment may still be upheld, however, if Kasey's conduct was not as a matter of law a proximate cause of Followill's death. A plaintiff proves proximate cause by demonstrating a natural and continuous sequence of events arising from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and

---

8. In accordance with 21 U.S.C. § 802(11), the term "distribute" means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical. The term "distributor" means a person who so delivers a controlled substance or a listed chemical.

9. Gipson also asserts that Kasey gave pills directly to Followill and that Kasey owed Followill a duty of reasonable care in doing so. Kasey contends that there are no credible facts supporting the conclusion that he gave pills directly to Followill. Because we are remanding, we need not attempt to resolve this factual dispute. To assist the trial court on remand, however, we observe that if Kasey gave prescription drugs directly to Followill, a duty of reasonable care would exist in conjunction with that act. The duty is founded upon the relationship between the parties, the foreseeability of harm, and the statutes prohibiting the distribution on one's prescription drugs to another.

without which the injury would not have occurred. *Robertson v. Sixpence Inns of America, Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990); *see also Markiewicz v. Salt River Valley Water Users' Ass'n*, 118 Ariz. 329, 338 n. 6, 576 P.2d 517, 526 n. 6 (App.1978) (noting "there is liability if the defendant's conduct contributed 'only a little' to plaintiff's injuries"). "An 'efficient intervening cause' is an independent cause that occurs between the original act or omission and the final harm and is necessary in bringing about that harm." *Barrett v. Harris*, 207 Ariz. 374, 378, ¶ 11, 86 P.3d 954, 958 (App. 2004) (citation omitted).

¶ 29 Kasey argues that two intervening acts relieved him of any liability: 1) Watters giving the pills to Followill; and 2) Followill taking the pills while drinking alcohol. Kasey contends that the responsibility to prevent harm shifted to Watters, thereby breaking the chain of causation and relieving Kasey of any potential liability to Followill or Gipson. Alternatively, Kasey asserts that Followill was the ultimate decision-maker when he consumed the pills and that any potential liability of Kasey ended when Followill voluntarily consumed the pills. The trial court agreed with Kasey.

¶ 30 The cause of Followill's death was the combination of Oxycodone with alcohol. Without the act of Watters giving Followill the Oxycontin pills and without the act of Followill ingesting them while consuming alcohol, Followill's death may not have occurred. Both of these acts occurred after Kasey gave the pills to Watters and both acts contributed to Followill's death. Accordingly, we agree that both acts were intervening causes.

¶ 31 This is not the end of the inquiry, however. We must determine whether the intervening acts constituted superseding causes of Followill's death. As our supreme court explained in *Ontiveros*, an intervening cause breaks the chain of proximate causation only if it is a superseding cause:

The policy of the law on questions of intervening and superseding cause has evolved to the rule that the original actor is relieved from liability for the final result when, and only when, an intervening act of

another was unforeseeable by a reasonable person in the position of the original actor *and* when, looking backward, after the event, the intervening act appears extraordinary.

136 Ariz. at 506, 667 P.2d at 206. Stated another way, an intervening cause becomes a superseding cause, thereby relieving the defendant of liability for the original negligent conduct, "when [the] intervening force was unforeseeable and may be described, with the benefit of hindsight, as extraordinary." *Robertson*, 163 Ariz. at 546, 789 P.2d at 1047. *Cf.* Keeton et al., § 44, at 307.

¶ 32 As already noted, the "definition of a reasonably foreseeable event is an event that might 'reasonably be expected to occur now and then, and would be recognized as not highly unlikely if it did suggest itself to the actor's mind.'" *Tellez*, 188 Ariz. at 172, 933 P.2d at 1240 (quoting Keeton et al., § 44, at 307). And as we explained in *Rogers v. Retrum*, 170 Ariz. 399, 825 P.2d 20 (App.1991), when analyzing the legal cause of an injury, "we must take a broad view of the class of risks and victims that are foreseeable, and the particular manner in which the injury is brought about need not be foreseeable." *Id.* at 401, 825 P.2d at 22 (quoting *Schnyder*, 136 Ariz. at 431, 666 P.2d at 531).

¶ 33 These principles are illustrated by the majority's explanation in *Tellez* why a certain category of conduct was not unforeseeable, even though the specific conduct that occurred was not foreseen:

The dissent argues that Fernandez's negligence was an intervening superseding cause. The dissent claims that no reasonable person in Sabans' position could foresee that "renting a car to Fernandez, through Pitts, for one day, would result in Fernandez absconding with the car, getting heavily intoxicated, running a red light, and colliding with another vehicle eight days later." We think the issue is not whether Sabans should have foreseen that Fernandez would "abscond" with the vehicle and become intoxicated. Rather, the issue is whether a reasonable person in Sabans' position would have foreseen that Fernandez might operate the vehicle negli-

gently and whether, with the benefit of hindsight, her negligence is abnormal or extraordinary.

188 Ariz. at 172, 933 P.2d at 1240 (footnote omitted).

¶ 34 Thus, in evaluating whether the two intervening acts were unforeseeable and extraordinary, we must consider whether Watters' act of giving the pills to Followill might "reasonably be expected to occur now and then," *see Tellez*, 188 Ariz. at 172, 933 P.2d at 1240, and whether Followill's act of ingesting some or all of the pills, along with alcohol, might similarly be expected to occur now and then. On this record, reasonable jurors could reach either conclusion: that these events were foreseeable or that they were not. Kasey, therefore, is not entitled to summary judgment on the basis that these acts were a superseding cause as a matter of law. *See Smith v. Chapman*, 115 Ariz. 211, 214, 564 P.2d 900, 903 (1977) (explaining that generally the question of proximate cause is for the jury). A jury may agree with Kasey that Watters and Followill are primarily or totally at fault. But their acts are not so clearly unforeseeable that we can declare as a matter of law that any fault on the part of Kasey was not the proximate cause of Followill's death.[10]

¶ 35 Kasey insists that Followill was the ultimate decision-maker when he consumed the pills and caused his own death, and that any potential liability of Kasey ended once Followill voluntarily consumed the pills. *See McCleaf v. State*, 190 Ariz. 167, 172, 945 P.2d 1298, 1303 (App.1997) (recognizing that the intervention of an "ultimately authoritative decision-maker" such as a judge or doctor may become a superseding cause that cuts off liability for prior negligence). But even if we were to agree with Kasey's characterization of Followill as the ultimate decision-maker, we could not declare Followill's conduct to be a superseding cause as a matter of law. In Arizona a court generally cannot grant summary judgment or a directed verdict on the basis of plaintiff's fault in causing an injury or death. *See* Ariz. Const. art. 18, § 5 ("The defense of contributory

negligence ... shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."); A.R.S. § 12–2505(A) (2003) ("[C]ontributory negligence ... is in all cases a question of fact and shall at all times be left to the jury."); *Markowitz*, 146 Ariz. at 359, 706 P.2d at 371 ("A contributory negligence issue cannot be taken from the jury by the simple expedient of calling it an issue of causation."); *see also Tobel v. State*, 189 Ariz. 168, 173, 939 P.2d 801, 806 (App. 1997) (explaining that plaintiff's failure to look before entering a lane of traffic raises the defense of contributory negligence and that issue cannot be taken from the jury by calling it a causation question). Further, our supreme court in *Gunnell v. Arizona Public Service Company*, 202 Ariz. 388, 46 P.3d 399 (2002), emphasized:

> "[I]t has been consistently held that when there is evidence that the plaintiff was negligent, whether such negligence was a contributing cause of the injury as would deprive plaintiff of the right to recovery was solely a question for the jury." Undisputed evidence may show that the plaintiff was negligent and that this was a contributing cause of the injury; nevertheless, under the correct interpretation of article XVIII, § 5, the jury *may* find in favor of the plaintiff.

*Id.* at 395, ¶ 26, 46 P.3d at 406 (quoting *Layton v. Rocha*, 90 Ariz. 369, 370, 368 P.2d 444, 445 (1962)). Accordingly, the evaluation of Followill's comparative fault is a question of fact and must be left to a jury.

¶ 36 Finally, Kasey cites several opinions from other jurisdictions for the proposition that intoxicated persons who harm themselves should not be allowed to maintain claims against those who supplied the intoxicating substances. In one such case, an Oklahoma court quoted the following language from a California case:

> When the restraint of reason and the ability to care for one's self are perverted by a conscious, self-indulgent act of voluntary intoxication which temporarily casts off those powers, no societal or personal wrong, nor violation of public or social

---

**10.** Because we find a fact question regarding foreseeability, we need not consider whether these two acts, with the benefit of hindsight, were "extraordinary."

policy is accomplished or violated if the actor is alone held answerable for his injury.... Governmental paternalism protecting people from their own conscious folly fosters individual irresponsibility and is normally to be discouraged.... To go yet another step and allow monetary recovery to one who knowingly becomes intoxicated and thereby injures himself is in our view morally indefensible.

*Ohio Cas. Ins. Co. v. Todd*, 813 P.2d 508, 512 (Okla.1991) (quoting *Kindt v. Kauffman*, 57 Cal.App.3d 845, 129 Cal.Rptr. 603, 610 (App. 1976)). This may be good public policy, but it is not the law of Arizona. We have applied Arizona law regarding duty and proximate cause.

### CONCLUSION

¶ 37 For these reasons, we conclude that Kasey owed Followill a duty of reasonable care and that Kasey is not entitled to summary judgment on the issue of proximate cause. We therefore reverse the summary judgment and remand for further proceedings.

CONCURRING: LAWRENCE F. WINTHROP, Judge and SILVIA R. ARELLANO, Judge Pro Tempore.*

